**Ruben VALERIO, Appellant
(Defendant below),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff below).**

No. 4456.

Supreme Court of Wyoming.

Nov. 6, 1975.

Rehearing Denied Dec. 10, 1975.

Richard F. Pickett, Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellant.

Frank Mendicino, Atty. Gen., David A. Kern, Asst. Atty. Gen., Cheyenne, Thomas J. Carroll, County Atty. for Laramie County, Cheyenne and George A. Zunker, Graduate Law Student, for appellee.

Before GUTHRIE, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and ARMSTRONG, D. J., Retired.

ARMSTRONG, District Judge, Retired.

Appellant, Ruben Valerio, was convicted by a jury of two counts of delivering cocaine, a controlled substance, to Alfredito Sanchez and sentenced by the trial court on June 10, 1974, to serve concurrent terms of fourteen to seventeen years on each count in the state penitentiary.

The testimony establishes that Sanchez sold an ounce of cocaine on January 6, 1973, to two men who, unknown to him, were narcotics agents. He was paid with twelve one hundred dollar bills whose serial numbers had been recorded by the agents. At the same rendezvous, they arranged to make another purchase. On January 8, 1973, the three men met again. Sanchez testified that he called the appellant and then informed the agents that his source could supply three-fourths of an ounce of cocaine for $900.00 and to meet him later that evening.

Agents from the Attorney General's Criminal Investigation Division placed Sanchez under surveillance and observed him briefly visiting the residence of the appellant, and then meeting the agent-purchasers at the parking lot as agreed. The transaction was consummated and the $900.00 paid for the drug was again marked money.

Sanchez testified he immediately called appellant and arranged to meet him at the same parking lot. Shortly after the call, Valerio was observed by surveillance officers leaving his home and meeting Sanchez.

The narcotics agents again contacted Sanchez for another purchase of a larger quantity of cocaine on January 11, 1973. Sanchez again testified that appellant supplied him with the required amount and the sale was made. Again the officers paid Sanchez $5,000.00 in recorded currency. Surveillance teams testified that Sanchez went to appellant's residence shortly after receiving the money. Sanchez testified that he gave the money to appellant's wife, who denied it.

A week later, January 18th, the agents obtained a search warrant for appellant's home which authorized the search and seizure of only cocaine. No drug was found in the premises, but $1,950.00 of the recorded money, paid on January 8th and 11th, was recovered. Mrs. Valerio testified that the $1,950.00 was money paid by Sanchez to appellant for a motorcycle.

Appellant assigns six alleged errors which he asserts were committed during the trial of his case. Each will be discussed separately.

■ The appellant's first alleged error is that he was deprived of the opportunity to use an impeaching witness to attack Sanchez's credibility after he (Sanchez) denied that he used cocaine although he admitted use of marihuana. There was no evidence, nor offer of proof, that Sanchez was under the influence of drugs when he testified, or when the events occurred to which he testified, nor that his mental faculties were impaired for any reason.

An annotation in 52 A.L.R.2d 848 states:

" * * * The view adhered to by what may be called the weight of authority is that testimony as to narcotic addiction, or expert testimony as to the effects of the use of drugs, is not considered admissible to impeach the credibility of a witness unless followed by testimony tending to show that he was under the influence while testifying or when the events to which he testified occurred, or that his mental faculties were actually impaired by the habit."

McCormick on Evidence 2nd Ed. on pp. 94 and 95 discusses and agrees with the rule stated in the A.L.R.2d note above. On the question of what is and is not admissible extrinsic evidence to impeach a witness by producing collateral facts, McCormick, at page 99, says in part:

" * * * Facts showing misconduct of the witness (for which no conviction has been had) * * * are collateral, and if denied on cross-examination cannot be proved to contradict."

The new Federal Rules of Evidence, Rule 608, says in effect that the credibility of a witness may be attacked by opinion or reputation evidence which refers only to character for truthfulness or untruthfulness. Specific instances of the conduct of the witness for impeachment purposes may not be proved by extrinsic evidence, other than conviction of a crime.

Appellant's first assignment of error is without merit. State v. Sorenson, 34 Wyo. 84, 241 P. 707, 708 (Wyo.1925); Gabrielson v. State, 510 P.2d 534, 536 (Wyo.1973).

The second point urged by appellant on appeal is that the District Court did not require Sanchez to testify to the address of his residence during the pendency of the trial. There was no evidence offered to show that Sanchez was paid for testifying; nor was any evidence offered to demonstrate that he had any interest or bias in the outcome of the case, nor that any promise of leniency had been offered to him by the State with respect to the charges then pending against him.

■ The evidence sustains the prosecution's contention that Sanchez was not an informer, but was a participating witness and as such was entitled to be free from "harassment or undue inconvenience by a defendant or his counsel either directly or indirectly." The court's ruling on the nondisclosure of the witness's address was within its discretion and was a reasonable step taken to avoid such harassment. Jackson v. State, 522 P.2d 1286, 1289 (Wyo. 1974), reh. den. July 10, 1974.

■ Furthermore, there was dialogue between counsel received out of the hearing of the jury that there was substantial reason to fear for the witness's safety. This alone would be sufficient ground to sustain the State's objection to divulging the witness's address. Smaldone v. U. S., 484 F.2d 311, 318 (10th Cir. 1973), reh. den. August 31, 1973; U. S. v. Crockett, 506 F.2d 759, 762 (5th Cir. 1975), reh. den. March 4, 1975.

Appellant was allowed liberal latitude in cross-examining Sanchez on all of his testimony except his address. The examination afforded appellant ample opportunity "to place the witness in his proper setting," *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 625, 628.

" * * * The witness should have an opportunity to demonstrate to the trial judge that the defendant's solicitation of his or her house address constitutes only an attempt to 'harass, annoy or humiliate.' "

*U. S. v. Alston*, 460 F.2d 48, 52 (5th Cir. 1972) ; *U. S. v. Daddano*, 432 F.2d 1119, 1128 (7th Cir. 1970).

There was no error in the Court's ruling on that objection.

Appellant's third assignment of error is the trial court's denial of his motions to suppress the introduction into evidence of "marked" or "recorded" currency found in defendant's home during the search on the ground that the search warrant specifically described only one item to be seized, namely cocaine.

The search warrant in this case was supported by an affidavit of James Cooper, one of the State's investigating officers. The affidavit consisted of seven pages: 31 numbered paragraphs and approximately 2,800 words. The only reference therein to marked or recorded money is found in a paragraph detailing the January 8th sale when Sanchez delivered a quantity of cocaine to an agent in exchange for $900.00 "in recorded Federal funds."

The inventory of the property seized from appellant's home on January 18, 1973, listed ten items, three of which were money totaling $2,920.00. When seized, $1,950.00 of the currency was identified by serial numbers as being part of the purchase price paid by the agents for the cocaine received on January 8th and January 11th.

No cocaine was discovered during the search and cocaine was the sole item described in the warrant.

Appellant does not question the legality of the warrant but in his argument he contends that the recorded currency should have been suppressed and not allowed in evidence because it was not particularly described in the warrant. He postulates that the officers knew, or should have known, the recorded money would be in his house. This premise is not substantiated by any evidence.[1] It could be as logically hypothesized that the officers believed that the money would have been removed from the residence during the week that intervened between the last sale and the search and that therefore they thought they lacked probable cause and, further, that they were concerned about an additional supply of a dangerous drug.

Appellant relies upon the last clause of Art. I, § 4 of the Wyoming Constitution, which is almost identical to the Fourth Amendment of the United States Constitution, which section reads:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and sei-

---

1. It is suggested that if the officers knew the marked money was in the house in plain view and they intended to seize it, there would be no "inadvertent" discovery and the seizure "would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 2041, 29 L.Ed.2d 564. Such knowledge would also indicate bad faith on the part of the officers when they sought the search warrant. There was no evidence from which bad faith could even be inferred. "The search, of course, must be directed in good faith toward the objects specified, in the warrant, but if in the course of that search the officer discovers items not described that might have been seized in a search incident to an arrest, such evidence may also be legally seized in the search pursuant to the warrant." (Citing cases.) *State v. Bolen*, 205 Kan. 377, 469 P.2d 422, 423 (1970) ; *U. S. v. Robinson*, 287 F.Supp. 245, 254 (D.C.N.D.Ind.1968).

zures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

 It is well established and we hold that, given a lawful search, some things may be seized in connection therewith which are not particularly described in the search warrant.

*Marron v. U. S.*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *Morales v. State*, 44 Wis.2d 96, 170 N.W.2d 684, 689 (1969); *Sanders v. U. S.*, 238 F.2d 145 (10th Cir. 1956); *Bryant v. U. S.*, 252 F.2d 746, 749 (5th Cir. 1958); *Johnson v. U. S.*, 110 U.S. App.D.C. 351, 293 F.2d 539 (1961), cert. den. 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1963); *Palmer v. U. S.*, 92 U.S. App.D.C. 103, 203 F.2d 66 (1953); *U. S. v. Epstein*, 240 F.Supp. 84, 86 (U.S.D.C.S.D. N.Y.1965); *U. S. v. Donovan*, 251 F.Supp. 477 (U.S.D.C.Ohio 1968), where cash was lawfully seized under a warrant describing only gambling paraphernalia; *U. S. v. Joseph*, 174 F.Supp. 539, 544 (U.S.D.C.E.D. Pa.1959), affirmed in 278 F.2d 504 (3rd Cir. 1960), reh. den. June 6, 1960, cash not described in warrant but had "a reasonable relation to the purpose of the search;" *U. S. v. McDonnell*, 315 F.Supp. 152 (U.S.D. C.D.N.Neb.1970), "To require the officer to abandon or complete the search, get another warrant on the strength of what he saw while making the search, and then return before seizing the property would be sacrificing substance for form, where instant connection between the newly seen evidence and the crime can be made."; *U. S. v. Robinson*, 287 F.Supp. 245 (U.S.D.C. N.D.Ind.1968); *People v. Henry*, 173 Colo. 523, 482 P.2d 357 (1971); *People v. Piwtorak*, 174 Colo. 525, 484 P.2d 1227 (1971); *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996, 1000, (1963) good dictum by Justice Pringle; *Bell v. State*, 482 P.2d 854, 860 (Alaska 1971), may seize evidence though not described in warrant when items are reasonably related to the offense in question; *State v. Davenport*, 516 P.2d 65 (Hawaii 1973); *State v. Van Beek*, 212 N.W.2d 659 (S.D.1973), reh. den. January 8, 1974; *Deeter v. State*, 500 P.2d 68 (Wyo. 1972), reh. den. September 14, 1972, footnote says in part:

"* * * it is permissible to seize things other than those described in the search warrant if they have reasonable relation to the purpose of the search."

3 Wright's Fed.Prac. and Proc. 100 reads in part:

"* * * In the course of an authorized search the officer may seize things not described in the warrant if they are otherwise subject to seizure and bear a reasonable relationship to the purpose of the search."

There are several cases which go beyond the authorities cited above. 73 Dick.L.Rev. 372–374 states this rule as follows:

"* * * While the scope of the search is limited to those objects specified, the prevailing opinion in the federal law allows the immediate seizure of all articles uncovered which reasonably appear at the time to constitute fruits, instrumentalities, contraband or mere evidence of a crime without consideration as to whether they are connected with the offense charged."

See *U. S. v. Eisner*, 297 F.2d 595 (6th Cir. 1962) cert. den., 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962); *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), which adds "mere evidence"; *Abel v. U. S.*, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), having come into officer's possession through a lawful search, "it would be entirely without reason to say that he must return the item because it was not one of the things it was his business to look for."; *U. S. v. Henkel*, 451 F.2d 777 (3rd Cir. 1971), bait money found which was stolen from another bank; *State v. Davenport*, 510 P.2d 78 (Alaska 1973), where appellant argued "that since the police had reason to believe that they might find the

furs in the attic, the search lacked good faith." The court countered with this: "There is no evidence in the record to suggest that the search for guns was a pretext to conduct a search for furs. * * * The underlying basis for the intrusion into the Davenport home was legitimate and the search was conducted in a lawful manner. Thus, we conclude that the search was conducted in good faith.";

*State v. Davenport, supra,* quotes *Coolidge v. New Hampshire, supra* n. 1, 403 U.S. 443, 91 S.Ct. 2022:

> " ' * * * Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous —to the evidence or the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.' " [2];

*State v. Hubbard,* 215 Kan. 42, 523 P.2d 387 (1974):

> " * * * A police officer knows of many thefts and is always on the lookout for known stolen property whether listed on a warrant or not. This does not mean that he is acting in bad faith in executing a warrant on which particular items are listed for search.";

*State v. Florance,* 527 P.2d 1202 (Or.1974), which relied on *United States v. Robinson, supra* n. 1 and *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973).

*A fortiori,* there are many cases which permit the introduction into evidence of items seized in the course of an arrest. Granted this rule is another recognized exception to the requirement of a search warrant, but if such evidence may be lawfully taken as incident to an arrest, surely evidence found as fruit of a crime being investigated can be taken even though the evidence is not particularly described in the search warrant.

The case most frequently cited for the above rule is *Harris v. U. S.,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and it is still good authority for a search incident to an arrest, although *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), limited the area that could be searched. In his dissent in *Harris,* Justice Jackson says:

> "It is said this search went beyond what was in 'plain sight.' It would seem a little capricious to say that a gun on top of a newspaper could be taken but a newspaper on top of a gun insulated it from seizure."

In addition to *Harris* for contemporaneous searches incident to lawful arrests, but without search warrants, see *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963); *Marron, supra, Draper v. U. S.,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); *Abel v. United States, supra.*

We conclude that appellant's privacy was no more disturbed by seizing the currency known by the officers to be directly connected with the crime than it was by the search under a lawfully issued warrant.

■ The appellant next contends that the District Court erred in denying his motion for change of venue. Testimony offered to sustain this motion was that Defendant's name had been mentioned in various media on numerous occasions in connection with other offenses and trials. There was no evidence that the community

---

**2. The State equates the facts in the case at bar with *Coolidge* on the ground that the marked money was inadvertently found. *Coolidge* added "inadvertence" to the "plain view" exception to the rule requiring warrants but the currency in this case was not in plain view although inadvertently discovered. Officer Cooper testified that the $1,950.00 of recorded funds were "found under the bed and carpeting at the Valerio residence."**

Compare: *Alcala v. State,* 487 P.2d 448, 453 (Wyo.1971), reh. den. August 2, 1971 where the items were in plain view. See also *U. S. v. Damitz,* 495 F.2d 50, 56 (9th Cir. 1974) and *State v. Pontier,* 95 Idaho 707, 518 P.2d 969 (Idaho 1974), which lonesomely rejects the inadvertence required by *Coolidge* because it was subscribed to by only four justices.

harbored any bias or prejudice against him.

Rule 23(a) Wyoming Rules of Criminal Procedure permits transfer of criminal cases to another county for trial if the District Court judge "is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the Defendant that he cannot obtain a fair and impartial trial in that county."

The District Court was not so "satisfied" and no abuse of his discretion or finding has been shown. *Jackson v. State,* 522 P.2d 1356 (Wyo.1974), reh. den. July 10, 1974.

It has been held in Wyoming several times that the evidence to support a transfer of trial to another county must show prejudice so great and general in the community that a fair and impartial trial could not there be obtained. That showing is absent in this record. *State v. Hambrick,* 65 Wyo. 1, 196 P.2d 661, 666, reh. den. 65 Wyo. 1, 198 P.2d 969 (1948); *State v. Spears,* 76 Wyo. 82, 300 P.2d 551, 559 (1956); *Mares v. State,* 500 P.2d 530, 535, (Wyo.1972); *Moss v. State,* 492 P.2d 1329, 1331 (Wyo.1972); *State v. Jackson, supra;* Annotation, 33 A.L.R.3d 17, 39–40 (1970).

■ Appellant's fifth complaint is that the District Court refused to give the jury any cautionary instruction on the testimony of an informer. His argument assumes that when Sanchez, an accomplice, testifies he is transformed into an informer or accomplice-informer especially because this is a narcotics case. The argument is ingenious, but no authority is cited to support the transformation. In addition, the facts are lacking to place Sanchez into the definition of an informer, as stated in *Jackson v. State,* 522 P.2d at 1287: "an undisclosed person who confidentially discloses material information of a law violation." In the negative, persons who supply information "only after being interviewed by law enforcement officers" or "during the course of an investigation or *trial*" (empha-

sis supplied) are not informers in the usually accepted sense of the word. Sanchez was not an informer and an instruction to that effect would only confuse the jury. The court did give a cautionary instruction on the testimony of an accomplice to which appellant offered no objection.

This objection is, therefore, without merit.

■ Finally, the appellant contends that the verdict was not supported by the evidence and that he was entitled either to a judgment of acquittal or a new trial on his motions made therefor pursuant to Rules 30 or 34 Wyoming Rules of Criminal Procedure.

His argument on this point revolves essentially on his contention that Sanchez's testimony was all the State had to rely upon. He ignores the testimony of numerous federal and state narcotics agents concerning fruits of the search and the tight surveillance they maintained on both Sanchez and defendant. Appellant submits that his six witnesses conclusively proved how the marked money was found in defendant's bedroom. On the contrary it is conceivable that the jury did not believe that defendant bought a $400.00 motorcycle from Sanchez for $2,000.00 *Fresquez v. State,* 492 P.2d 197, 202 (Wyo.1971).

"In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of the witnesses; and it must view the evidence in a light most favorable to the prosecution and determine questions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict." *Harris v. State,* 487 P.2d 800, 801 (Wyo.1971), reh. den. September 20, 1971.

We fail to find error in any of the six assignments presented for our review.

Affirmed.