Steven Louis GIST, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 87–263.

Supreme Court of Wyoming.

Dec. 23, 1988.

Steven E. Sumida, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Senior Asst. Atty. Gen., and Marla Vollmar (argued), Student Intern, Prosecution Assistance Clinic, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.*

CARDINE, Chief Justice.

Appellant Steve Gist was convicted of delivery of a controlled substance, marijuana, in violation of § 35–7–1031(a)(ii), W.S. 1977. He appeals his conviction, contending that the trial court erred in prohibiting him from presenting witnesses to impeach a narcotics officer who testified against him.

We reverse.

On May 17, 1985, David Lauck, an undercover narcotics officer for the Campbell County Sheriff's Department, met appellant's brother, Roger Gist, in the alley beside the Gist brothers' house. The two men entered a vehicle, and Roger Gist asked Agent Lauck if he wanted to make a marijuana purchase. During this discussion, Roger Gist lit and smoked a marijuana cigarette. According to Agent Lauck, Roger Gist offered the cigarette to him and he "simulated the use of that cigarette." While Roger Gist and Agent Lauck were in the car, appellant Steve Gist was outside the residence talking to someone in a truck.

Roger Gist and Agent Lauck left the vehicle and, as they walked towards the house, a person named Robin pulled up and told Roger Gist that he wanted to buy some marijuana. Roger Gist, Agent Lauck and Robin walked into the house and entered the kitchen where Roger removed

* Chief Justice, Retired, June 30, 1988.

some "samples" of marijuana from between the leaves of the kitchen table. After viewing the samples, Agent Lauck and Robin both agreed to make a purchase.

According to Agent Lauck, appellant then entered the residence and, after Roger informed him of the quantities to be purchased, he left the kitchen and returned with one ounce of marijuana, which was all that was left. According to Agent Lauck, appellant handed the baggie of marijuana to him and told him to put the money on the windowsill. Agent Lauck did so and left the residence.

As a result of this transaction, appellant was charged with delivery of marijuana and his brother, Roger, was charged with aiding and abetting a delivery. A jury convicted appellant of the delivery charge. On appeal, we reversed the conviction, concluding that appellant received ineffective assistance of counsel. *Gist v. State*, Wyo., 737 P.2d 336 (1987).

After remand, a second jury trial was held. The State relied on Agent Lauck as its sole witness. In his *direct testimony*, Lauck testified as follows:

"Q. Did you do anything else while you were in the vehicle with Roger Gist?

"A. Yes. Roger lit a—what appeared to be a marijuana cigarette that day, and he smoked it, and I simulated the use of that cigarette.

"Q. You say—you stated simulated use; what do you mean by that?

"A. I give the suspects the appearance that I would be using the drugs, *but I don't use the drugs.*

"Q. And how was it that you did that?

"A. With marijuana rolled in a cigarette form, mainly, all you have to do is take it from them without hesitation and bring it up close to your mouth, like you would be smoking it, and return it back to them.

"Q. On May 17th then of 1985, did you smoke that cigarette?

"A. No, I did not." (Emphasis added.)

During cross-examination, Lauck's testimony on this subject was attacked in the following exchange:

"Q. So you just smoked it out in the car in front of everybody?

"A. I didn't smoke it.

"Q. You simulated it. How do you simulate exhaling smoke when someone's sitting right next to you?

"A. I didn't simulate exhaling. I didn't blow any smoke out. I didn't take any smoke in. I didn't even touch it to my lips.

"Q. And you say you've never used drugs?

"A. That's right.

"MR. MASSEY: Objection, Your Honor. That's inappropriate.

"MR. SAMPSON: I believe he testified to that on direct, Your Honor.

"THE COURT: I don't think he did testify to that.

"MR. MASSEY: Your Honor, whether or not he smoked on this particular day is relevant, but any past use, if there was any, is irrelevant under the rules of evidence.

"THE COURT: Sustained."

Later in the cross-examination, appellant's counsel asked Agent Lauck if he testified in appellant's earlier trial that he never used drugs. The court sustained the State's objection to this question, stating "[t]he only issue that's relevant in this trial is whether his perceptions were impaired by the use of drugs on that day."

In the ensuing bench conference, appellant's attorney argued that Lauck's testimony concerning his role in the grand jury investigation opened the door to evidence of prior drug use by Agent Lauck. More specifically, appellant's counsel argued that he should be allowed to present evidence of Agent Lauck's prior drug use with other suspects in order to contradict Lauck's statement that he merely simulated the use of drugs. Appellant also argued that the evidence of drug use was relevant to Agent Lauck's ability to perceive and recall the transaction for which appellant was charged. After hearing these arguments, the court informed appellant's counsel that

"if you want to inquire of Mr. Lauck about his prior drug use, I'm going to permit you to do that. But I'm not going

to let you prove by extrinsic evidence or attempt to prove by any other kind of extrinsic evidence that what he said is false. You have to live with his answers. If you don't like his answers, that's just going to be tough cookies."

Defense counsel's cross-examination of Agent Lauck continued with the following exchange:

"Q. Officer Lauck, did you use drugs?

"A. No. I've never used illegal drugs.

"Q. You never used drugs on May 17th?

"A. That's correct."

After the State rested, the court allowed appellant to make an offer of proof in the form of testimony of several persons who claimed to have used drugs with Agent Lauck. The thrust of their testimony was that during the Campbell County Grand Jury investigations Lauck did not simulate drug use, but instead actually ingested several different drugs, including methamphetamine and marijuana. After hearing the offer of proof, the court reaffirmed its ruling excluding the testimony.

Roger Gist then testified on behalf of appellant. He stated that Agent Lauck "definitely inhaled" marijuana when the two men were in the car outside appellant's residence on the day of the charged transaction, and that Lauck "got high" on that marijuana. He also testified that he delivered the marijuana to Lauck and that appellant was not in the house when the transaction occurred. Appellant then testified that he did not deliver the marijuana to Agent Lauck and that he did not know that the drug transaction occurred until sometime later. Approximately eight hours after beginning deliberations, the jury returned a guilty verdict.

▇ In challenging his conviction, appellant focuses on the trial court's ruling which prevented him from presenting witnesses to testify to Agent Lauck's prior drug use. In excluding this testimony, the trial court relied on Rule 608(b), W.R.E., which provides, in relevant part:

"*Specific instances of conduct.*—Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

The purpose of Rule 608(b) is to prevent a party from using extrinsic evidence of specific conduct in order to establish character or disposition to be untruthful. 3 D. Louisell and C. Mueller, Federal Evidence § 306. To the extent that the testimony of Agent Lauck's prior drug use was offered for this purpose, it was clearly inadmissible under Rule 608(b). The evidence was also offered, however, for two other purposes. The first purpose was to contradict Agent Lauck's assertion in his *direct testimony* that he merely simulated the use of drugs with suspects but did not use them. Second, the evidence was offered to show that because Agent Lauck used drugs on prior occasions, he likewise used marijuana with Roger Gist on May 17, 1985, and, as a result, his perception was impaired at the time of the transaction.

The trial court erred in determining that Rule 608(b) precluded the admission of the offered testimony for these purposes.

"It is unfortunate (though perhaps understandable) that the courts sometimes fail to recognize that the focus of Rule 608 is upon impeachment and rehabilitation by proof of the *character* or *disposition* of a witness with respect to veracity, and that the provision affects impeachment by contradiction only in the most incidental way. Where a party seeks to establish *character* or *disposition* to be untruthful by proof of specific conduct by the witness, Rule 608(b) instructs that such conduct may be revealed only by questions directed to the witness himself, and not by means of other (or 'extrinsic') evidence. Inciden-

tally, the effect of this restriction is to foreclose extrinsic evidence of misconduct which might have the effect of contradicting a *denial* by the witness *elicited on cross-examination,* and in this narrow sense Rule 608(b) does indeed affect the quite separate mechanism of impeachment by contradiction. But some courts have lost sight of the focus of Rule 608(b), and have indicated that the provision imposes a more general restriction upon impeachment by contradiction, and in this respect these decisions are unsound and should be treated with caution.

"When a witness asserts *in his direct testimony* a point which can be refuted by evidence of his conduct on a particular occasion, the question whether the adverse party should be allowed to introduce such counterproof by way of contradiction must be answered by resort to other provisions—specifically Rules 401–403 and 611. Often such proof is entirely admissible to contradict *the direct testimony* of the witness, whether it takes the form of extrinsic evidence or comes out by way of cross-examination of the witness, at least where it also tends to refute such testimony on a substantive point (as by contradicting an assertion by a party-witness of an innocent or accident-free past), or to establish another substantive point (as by showing that the witness was involved in some way in a scheme or plot, which might support a defense in a criminal case, for example) or to establish a fact about the witness which affects his credibility in some way *other than* by shedding light upon his character (as by showing that the witness is biased or subject to undue influence). Rule 608(b) does not bar receipt of extrinsic evidence of *specific instances of conduct* in such circumstances, and does not even bear upon the question whether the evidence should be received." (Footnotes omitted; emphasis in original.) 3 D. Louisell and C. Mueller, Federal Evidence § 307, pp. 127–28 (1988 Supp.)

Lauck testified on direct examination, "but I don't use the drugs." This was an asser-tion of an innocent past. Thus, the offered testimony was admissible since it tended to refute Lauck's direct examination testimony on a substantive point.

 It is suggested that the trial court might have excluded this evidence "in its discretion" under Rule 403. First, it is readily apparent that the trial court did not, in its discretion, exclude this evidence under Rule 403, but excluded it erroneously under Rule 608(b). Thus, the trial court stated:

"[MR. MASSEY:] Furthermore, Rule 404(a)(ii) states that character of a witness, evidence of character of a witness is governed by Rules 607, 608, and 609.

"MR. SAMPSON: * * * I think it's important to know whether Mr. Lauck is under the influence of drugs and whether Mr. Lauck is a liar, * * *.

＊　　＊　　＊　　＊　　＊　　＊

"[THE COURT:] [T]he specific instances of conduct that you're trying to elicit, it seems to me is merely a thinly veiled attempt to try the character of Detective Lauck.

＊　　＊　　＊　　＊　　＊　　＊

"But I'm not going to let you prove by extrinsic evidence or attempt to prove by any other kind of extrinsic evidence that what he said is false.

＊　　＊　　＊　　＊　　＊　　＊

"MR. MASSEY: Your Honor, if I understand your ruling, for the record, the State would object to using anything prior to prove truthfulness or untruthfulness under Rule 608.

＊　　＊　　＊　　＊　　＊　　＊

"THE COURT: That's what I thought I said. They can't do that. I'm not going to permit it.

＊　　＊　　＊　　＊　　＊　　＊

"[THE COURT:] If Lauck says: I didn't use drugs in the past, I'm not going to let Mr. Sampson put on a whole batch of evidence that he did."

Second, we have in this case a prosecuting witness—who is the only witness to testify for the State—who testifies in his

direct examination that, "I don't use the drugs." That testimony went to the very heart of defendant's case. That testimony may have been false. Yet, it is suggested that there should be no opportunity to prove it false; that there should be no opportunity to attack the credibility of the only witness who testified against appellant. It is suggested that the trial court could exclude this evidence in its discretion. Had it done so, that clearly would have been an abuse of discretion, for we have said:

> "The credibility of a defendant in a criminal case may be tested and his testimony impeached like that of *any other witness*. When he testifies in his own behalf he has no right to set forth to the jury facts favorable to him without laying himself open to cross-examination upon those facts. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589, reh. denied 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 (1958)." (Emphasis added.) *MacLaird v. State*, Wyo., 718 P.2d 41, 47 (1986).

The real essence of the MacLaird case is that a witness who states facts favorable to himself in direct examination is subject to impeachment under the rules of evidence. In MacLaird, it was the prosecutor seeking to impeach the defendant. In this case, the defendant seeks to impeach the prosecutor's key and only witness, narcotics agent Lauck. There was a clear and obvious right to present this testimony, and we should not suggest otherwise, for we know that it is an ancient and successful trial tactic that prosecutors seek to present their witnesses as honest, pure, drug-clean, all-American boys. They do that because, if successful, their witnesses are more believable and more credible. But when they say, "I've never used illegal drugs," they open themselves to being impeached on that statement. We cannot know whether this jury was so gullible as to believe Lauck never used drugs and therefore was most credible and not under the influence of drugs at the time. We do know that this jury deliberated eight hours before arriving at a guilty verdict. It seems likely that impeachment would probably have resulted in a different verdict.

The State contends that the trial court's ruling is supported by *Valerio v. State*, Wyo., 542 P.2d 875 (1975). In Valerio, we held that drug use was not a proper subject for impeachment of a witness in the absence of evidence to show that the witness was "under the influence of drugs * * * when the events to which he testified occurred * * *." Id. at 877. We quoted with approval the following language from Annot., 52 A.L.R.2d 848:

> "'* * * The view adhered to by what may be called the weight of authority is that testimony as to narcotic addiction, or expert testimony as to the effects of the use of such drugs, is not considered admissible to impeach the credibility of a witness unless followed by testimony tending to show that he was under the influence while testifying, or when the events to which he testified occurred, or that his mental faculties were actually impaired by the habit.'"

In the present case, the testimony of consistent drug use was accompanied by Roger Gist's testimony of Lauck's use of marijuana at the time of the charged transaction. Thus, Valerio is readily distinguishable.

The trial court erred in refusing to allow appellant to present witnesses who would testify to Agent Lauck's prior drug use. The case is reversed and remanded to the district court.

THOMAS, J., filed a dissenting opinion in which BROWN, J., Retired, joined.

BROWN, J., Retired, filed a dissenting opinion in which THOMAS, J., joined.

THOMAS, Justice, dissenting, with whom BROWN, Justice, Retired, joins.

I disagree with the reversal of this conviction, and I join in the perceptive dissenting opinion of Justice Brown, Retired. I would embellish that dissenting opinion, briefly, in this way.

It also has become a favorite technique of defense in a criminal case to place the law enforcement officials on trial. Even though the majority conceded that this proffered testimony was not admissible, pursuant to Rule 608(b), W.R.E., its conclusion is that the testimony had independent relevance. If that view is correct, it should not be necessary to take the testimony out of context in order to justify it. Yet, several times, the majority opinion uses only a part of the same answer in order to justify its argument and, contrary to authority which is quoted, it then uses a response on cross-examination in a further effort to establish the validity of the majority position.

At page 5 of the slip opinion, the majority quotes extensively from 3 Louisell & Mueller, Federal Evidence § 307 at 126–128 (1988 Supp.). In that quotation, is this critical language:

> " * * * Incidentally, the effect of this restriction is to foreclose extrinsic evidence of misconduct which might have the effect of contradicting a denial by the witness elicited on cross-examination, and in this narrow sense Rule 608(b) does indeed affect the quite separate mechanism of impeachment by contradiction."

In context, the answer which the majority relies upon to justify the independent relevance of the proffered testimony is simply a definitional explanation of two words.

> "Q. You say—you stated simulated use; what do you mean by that?
>
> "A. I give the suspects the appearance that I would be using the drugs, but I don't use the drugs."

Contrary to the abstraction quoted by the majority opinion, this hardly is a pure statement that the witness does not use drugs. I submit that the first purpose suggested in the majority opinion for admitting this evidence is not justified by the authority relied upon by the majority. As to the second purpose, I think it is a leap in logic to claim that a demonstration by independent testimony that the agent used drugs on prior occasions shows that he used them on the date in question, but the contention that this testimony would show that "his perception was impaired at the time of the transaction," ante, at 5, truly is a non-sequitur. In my judgment, the attempts at rationalization found in the majority opinion would be true only if the party on trial was the law officer rather than Gist. Since that is not a correct interpretation of the situation, the relevance is lost.

I support the exercise of the trial court's discretion in excluding this evidence pursuant to Rule 403, W.R.E. Its only purpose was to confuse the issues and mislead the jury. Furthermore, I do not believe that any panel of jurors could be so gullible as to accept as credible the testimony of Gist's friends in this case. Consequently, the exclusion of the evidence simply did not make any difference.

When each of these defense witnesses testifies, proper impeachment relative to their misconduct and motive of revenge against the officer whose efforts culminated in their respective convictions will be necessary. The result then of the majority approach will be a swearing match in which the real issue will be lost in the introduction of a confusing and misleading mess of information unrelated to Gist's crime. I would affirm.

BROWN, Justice, dissenting, in which THOMAS, Justice, joins.

In his offer of proof, appellant proffered the testimony of six witnesses to impeach the testimony of Officer Lauck. Each of these felons had been indicted by the same grand jury that indicted appellant, and each had been convicted through the testimony of Officer Lauck. The court disallowed the testimony proposed by appellant, citing various provisions of the Wyoming Rules of Evidence.

The majority in its opinion gives no effect to the discretion afforded the court in its evidentiary rulings. W.R.E. 608(b), permits evidence of specific instances of conduct in very limited circumstances but "in the discretion of the court." W.R.E. 403, provides:

> Although relevant, evidence may be excluded if its probative value *is substantially outweighed by the danger of unfair prejudice, confusion of the is-*

*sues,* or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. (Emphasis added.)

Assuming arguendo that appellant's proposed testimony was relevant, there is no indication that the trial court abused its discretion in rejecting such testimony nor is there any explanation in the majority opinion why the court was not justified in excluding the testimony under W.R.E. 403. Evidentiary rulings will only be reversed upon appellant's showing of an abuse of discretion. *Miller v. State,* 755 P.2d 855, 861 (Wyo.1988).

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. [Citation.]

*Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986).

Under Rule 403 the court may exclude relevant evidence if such evidence tends to confuse the issues or mislead the jury. The testimony proposed by appellant is a classic example of evidence likely to confuse the issues and mislead the jury. If the court had allowed the alleged impeachment testimony proposed by appellant, then, to be consistent, the court should allow the state to produce witnesses to impeach the testimony of appellant's witnesses. All of this could result in two dozen mini-trials to determine who had impeached whom. The jury would likely be so confused that it would lose sight of the trial issue, that is, the guilt or innocence of the accused.

An ancient and very successful trial tactic in criminal cases is for the accused to put the victim on trial and thus divert the jury's attention. For example, in murder cases, the accused tries to produce evidence tending to show that the deceased was a bad man and society has suffered no great loss. In rape cases the accused tries to produce evidence designed to show that the victim was Jezebel reincarnated and deserved what she got. Here, there was no identifiable victim so appellant tried to divert attention to the state's witness.

The trial court did not abuse its discretion in excluding the impeachment testimony proposed by appellant. To allow such testimony would confuse the issue and mislead the jury. This court has held many times that:

Determinations of admissibility under Rule 403 are * * * committed to the discretion of the trial judge. His decision will not be reversed on appeal so long as a legitimate basis exists supporting it.

*Ortega v. State,* 669 P.2d 935, 944 (1983). See also *Hopkinson v. State,* 632 P.2d 79, 126 (Wyo.1981); *Buhrle v. State,* 627 P.2d 1374, 1380 (Wyo.1981); *Grabill v. State,* 621 P.2d 802, 810 (Wyo.1980); *Nimmo v. State,* 603 P.2d 386, 392 (Wyo.1979); *Elliott v. State,* 600 P.2d 1044, 1049 (Wyo. 1979); *Sanville v. State,* 593 P.2d 1340, 1345 (Wyo.1979).

Rule 403 also permits the court to exclude cumulative evidence. In this case appellant produced testimony that the state's witness, Officer Lauck, used drugs. Therefore, the proposed testimony by the six witnesses was merely cumulative and not admissible.

I would affirm the conviction.