**James Eugene PUNCHES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 96–139.**

Supreme Court of Wyoming.

Sept. 3, 1997.

Sylvia Lee Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; Diane M. Lozano, Assistant Appellate Counsel; Michael Dinnerstein, Director, Wyoming Defender Aid Program; Walter Eggers III, Student Director, and Joseph D. Richer, Student Intern, Wyoming Defender Aid Program, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Kimberly A. Baker–Musick, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; Anthony P. Garcia and Susan E. Schell, Student Interns, Prosecution Assistance Program, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellant James E. Punches appeals his conviction on one count of incest for which he was sentenced to three and one-half years to five years in prison. He claims inflammatory pretrial publicity and improperly admitted evidence deprived him of a fair trial.

We affirm.

## ISSUES

Punches presents these issues for our review:

I. Did the trial court deprive the Appellant of his right to a fair trial by denying the Appellant's Motion to Change Venue, even though inflammatory pretrial publicity in the local papers had prejudiced the public against the Appellant?

II. Did the trial court deprive the Appellant of his fundamental right to a trial by jury when it permitted expert opinion testimony that the complaining witness had been sexually assaulted and a further opinion as to the identity of the perpetrator?

III. Did the trial court deny the Appellant his right to a fair trial by ruling that the prosecution's principal witness was competent to testify even though he admitted he did not know what the truth was?

IV. Did the trial court improperly deny the Appellant his right to confront the prosecution's principal witness with evidence of that witness' dishonest character?

V. Did the trial court deny the Appellant his right to present evidence of his lawful character when it erroneously excluded evidence that the Appellant had no prior convictions or arrests?

VI. Did the trial court deprive the Appellant of his right to a fair trial by refusing to exclude evidence alleging prior bad acts and crimes by the Appellant with which the Appellant was never even charged?

The State rephrases these issues as:

I. Did the district court properly deny Appellant's motion for a change of venue?

II. Did the district court properly admit the testimony of the State's expert witness, Dr. Hansen?

III. Did the district court abuse its discretion when it found the child victim competent to testify against his father?

IV. Did the district court properly exclude evidence of the victim's prior acts?

V. Did the district court properly limit Appellant's evidence of his lawful character?

VI. Did the district court properly admit evidence of Appellant's prior bad acts?

### FACTS

On May 10, 1995, a passerby observed Punches having sexual intercourse with his nine-year-old son and later reported the incident to the police. After an initial investigation, the victim was placed in protective custody and eventually examined for sexual and physical abuse at Primary Children's Medical Center in Salt Lake City, Utah. On May 17, 1995, Punches was charged with incest pursuant to WYO. STAT. § 6–4–402(a)(ii). There were newspaper articles about the incident, and Punches filed a motion for a change of venue. After a pretrial hearing, the motion was denied. Pretrial hearings were also conducted on motions to admit evidence of prior bad acts by the defendant and to rule on the competency of the victim as a witness.

In a jury trial, the passerby eyewitness and the victim testified about the sexual abuse on May 10, and the child testified about numerous other incidents of sexual abuse against him by Punches. Physicians from Primary Children's Medical Center testified that the victim had physical injuries consistent with sexual abuse and had emotional problems consistent with severe sexual abuse over a period of time. Several professionals associated with the child's school also testified concerning multiple incidents of sexualized behavior that had been noted as possibly indicating sexual injury or trauma and described the victim's behavior on May 11, 1995, the day after the sexual abuse occurred, as destructive and "out of control." After a three day trial, the jury convicted Punches, and he was sentenced to three and one-half years to five years in the Wyoming State Penitentiary. This appeal followed.

### DISCUSSION

In his first argument, Punches asserts that inflammatory pretrial publicity required a change of venue, and the trial court abused its discretion in denying his motion for one. In the alternative, he contends that the district court should have sequestered the jury during the proceedings. Before a jury was seated, newspaper articles ran which Punches asserts prejudiced the public and made it impossible to seat an impartial jury from Sweetwater County.

WYO. R.CRIM. P. 21 provides the following about change of venue:

Rule 21. Transfer from the county for trial.

(a) *Prejudice within county.*—Upon timely motion of the defendant, the court shall transfer the proceeding as to that

defendant to another county, but only if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in that county.

■ In *Murry v. State*, 713 P.2d 202 (Wyo.1986), this Court established a two-part test to determine whether a change of venue should be granted because of publicity: "First, the nature and extent of the publicity must be considered; second, the difficulty or ease in selecting a jury must be considered along with the amount of prejudice which actually appears during voir dire examination." *Id.* at 208. However, "there is no requirement that a juror be ignorant of the facts and issues involved in a case." *Id.* The defendant must demonstrate the existence of an opinion of guilty in the mind of the juror to raise a presumption of partiality. *Collins v. State*, 589 P.2d 1283, 1289 (Wyo. 1979).

■ The district court held a pretrial hearing on the motion to change venue and essentially concluded that the articles which had run were not likely to have been read by a sufficient number in the jury pool to prevent the impaneling of an impartial jury. During voir dire, those jurors who believed they had heard something of the case were questioned concerning the impact of the publicity on their partiality and stated they had not formed an opinion and would be able to render a verdict based on the evidence presented at trial. The decision to grant a change of venue is within the sound discretion of the trial court and will not be overturned unless there has been an abuse of that discretion. *Armstrong v. State*, 826 P.2d 1106, 1121 (Wyo.1992); *Collins,* 589 P.2d at 1289. Nothing in the record indicates that the publicity had an effect on those who served on the jury, and we find no abuse of discretion. *Armstrong,* 826 P.2d at 1122. Nor do we find the court abused its discretion in not sequestering the jury on its own motion. *Collins,* 589 P.2d at 1291. Defense counsel did not request sequestration and concurred that the jury was not to be sequestered. Relying on *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600

(1966), Punches claims the court was required to sequester the jury *sua sponte* because extensive publicity during the trial was highly prejudicial. As discussed in *Collins,* the *Sheppard* decision resulted from the "extremely inflammatory publicity" and the "atmosphere of a carnival" created by media attention causing the court to conclude that the guilt found was the verdict of a mob. *Collins,* 589 P.2d at 1290. Here, a few largely factual stories were run during the trial and, according to our ruling in *Collins,* these types of stories are not sufficient to warrant finding that the court should have sequestered the jury. *Collins,* 589 P.2d at 1291.

■ Punches next contends that the physician expert who testified that the victim's physical injuries were consistent with sexual abuse impermissibly testified as to his guilt. In *Stephens v. State,* 774 P.2d 60 (Wyo.1989), we held that a witness may not offer an opinion as to the guilt of the defendant and doing so is reversible error. *Stephens,* 774 P.2d at 68. In this case, Dr. Hansen, a pediatrician from Primary Children's Medical Center, testified as follows:

Q. In your opinion, Doctor, are the scars that were found on [victim's] anus corroborative of sexual abuse?

A. Yes, they are corroborative of sexual abuse.

Q. Why is that?

A. Well, that seems the most likely way they could [have] happened. I do not think they're from constipation, though it's not impossible. That pretty much leaves a traumatic accident; for instance, impaling yourself on fence posts, something like that. We have no history of that. *We have a witnessed event. Two and two put together, I do believe that they're that way from sexual abuse and are corroborative of it.*

(Emphasis supplied.) Punches contends that the emphasized portion is evidence the expert testified as to his guilt.

In *Betzle v. State,* 847 P.2d 1010 (Wyo. 1993), we said that, consistent with Wyo. R. Evid. 702, expert testimony is admissible if helpful to the trier of fact. *Id.* at 1023. We said that expert testimony meeting the fol-

lowing avoids invading the province of the jury:

(1) the challenged testimony assists the jury in understanding some peculiar aspect of the victim's behavior and (2) the challenged testimony does not involve a comment on the credibility or truthfulness of the victim.

*Betzle*, 847 P.2d at 1023. Testifying that the injuries were consistent with sexual abuse is not directly expressing an opinion that there was sexual abuse, that the victim is telling the truth, or that the defendant was guilty of sexual abuse. We do not find error. *Id.* at 1024.

■ Punches argues that he was denied a fair trial because the district court allowed the victim to testify when the victim was not competent. He points to isolated statements that the victim made and contends they demonstrate the victim did not understand the obligation to tell the truth and lacked an independent recollection of Punches' acts of sexual abuse. The determination of a child's competency to testify is committed to the trial court's discretion, and that determination will not be disturbed unless shown to be clearly erroneous. *Trujillo v. State*, 880 P.2d 575, 579 (Wyo.1994). The trial court's findings are given considerable deference because that court is in the best position to judge the demeanor, truth and veracity of a witness. *Baum v. State*, 745 P.2d 877, 880 (Wyo.1987).

■ Wyo. R. Evid. 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying. *Larsen v. State*, 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." *Baum*, 745 P.2d at 879. In a pretrial hearing, the district court applied the required five part test to determine the victim's competency:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testi-

fy, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Larsen*, 686 P.2d at 585.

■ The complete record of the victim's testimony shows that he was competent to testify. He defined truth and oaths, explained the consequences of violating an oath to tell the truth, gave examples of truths and lies and described several incidents of sexual abuse with specific detail. When asked about his life at the time of the sexual abuse, he remembered where he had lived, gone to school, who his teachers were, classmates names, his counselor and the decor of the apartment. He did say that an investigating officer had taught him anatomy terms, and he contradicted himself on occasion, but this goes to the weight of the evidence and not competency to testify. *Smizer v. State*, 752 P.2d 406, 408 (Wyo.1988); *Trujillo*, 880 P.2d at 579. Given his entire testimony, the district court did not abuse its discretion in determining that he had sufficient memory for an independent recollection of what had happened to him and in ultimately determining he was competent to testify.

Punches next contends that the district court improperly excluded evidence of the victim's arrest for shoplifting which he offered to impeach the victim's credibility and to show the victim had a motive to testify falsely in retaliation against his father who had punished him. Because the arrest did not result in a juvenile adjudication or conviction, he asserts the evidence was admissible under Wyo. R. Evid. 608 (b) and 404.

■ The right of an accused to confront the witnesses against him is protected by the Sixth Amendment. *Amin v. State*, 686 P.2d 593, 595 (Wyo.1984). The right to effective cross-examination incorporated in the confrontation right is equally protected. *Id.* The extent to which a witness may be cross-examined is a matter to be determined by the trial court in the exercise of its sound discretion. *Id.* The admission of evidence is within the sound discretion of the trial

court. *James v. State*, 888 P.2d 200, 204 (Wyo.1994). On review, the trial court's evidentiary rulings are given considerable deference and are not disturbed and will not be disturbed unless a clear abuse of discretion is established. *Vit v. State*, 909 P.2d 953, 957 (Wyo.1996).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986).

Wyo. R. Evid. 404 states:

Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

▐▌ The admissibility of evidence offered under Rule 404 is subject to a test which includes a determination of whether the evidence will be introduced for a proper purpose. *Vigil v. State*, 926 P.2d 351, 354, 357 (Wyo.1996). Punches offered the shoplifting arrest evidence to show that the victim's punishment for the shoplifting incident might have made the victim angry and created a motive to falsify. As the State points out, the defense never established any basis for linking the shoplifting incident, which had occurred in March 1994, to a motive to falsify incest charges over a year later, in May of 1995. The district court did not abuse its discretion in concluding the defense had not established that the shoplifting was a prior act that shows motive.

▐▌ Punches argues that under *Taul v. State*, 862 P.2d 649 (Wyo.1993), evidence of shoplifting charges is admissible against a witness. In *Taul*, the defendant's parents were called by the defense as character witnesses. As the mother testified on direct about the law-abiding nature of her son, she mentioned a shoplifting incident. This Court held that the prosecution's cross-examination questions about the incident were proper because the defendant had opened the door and inquiry was proper as to the basis of the mother's belief that her son was not the type of person who would commit an armed robbery. *Taul*, 862 P.2d at 654–55. It is incorrect to say that *Taul* ruled that a shoplifting incident was admissible against a witness. The admissibility of specific incidents of conduct is controlled by Wyo. R. Evid. 608, which states:

> (b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In *Gist v. State,* 766 P.2d 1149 (Wyo.1988), we stated that the purpose of Rule 608(b) is to prevent a party from using extrinsic evidence of specific conduct in order to establish character or disposition to be untruthful. *Gist,* 766 P.2d at 1151. *Gist* decided that the prior drug use of a key prosecution witness was not admissible when offered for this purpose, but was admissible to refute a statement the witness had made on direct examination concerning a substantive point. *Gist,* 766 P.2d at 1152. In this case, the court decided that the shoplifting evidence did not address whether or not the victim was telling the truth in this matter and was, therefore, not admissible under Rule 608(b). The record supports this conclusion, and there was not an abuse of discretion.

Because Punches' next argument also concerns the admissibility of evidence, our standard of review is the same. Punches proposed to introduce evidence of his law-abiding character by presenting evidence that he had no prior convictions or arrests as permitted by WYO. R. EVID. 405. WYO. R. EVID. 404(a)(1) provides that a criminal defendant has a right to present evidence of a pertinent trait of his character and WYO. R. EVID. 405 sets forth the methods for proving character:

Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes.

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

* * * *

Rule 405. Methods of proving character.

(a) *Reputation or opinion.*—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.*—In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

■■■ The State challenged the evidence on grounds of relevancy and after a hearing on the matter, the court ruled that Punches' evidence would be limited to showing that he had no arrests or convictions for offenses similar to that involved in this case, specifically, sexual offenses or physical assault. During trial, Punches had two witnesses testify about specific instances of his conduct. He now contends it was prejudicial not to permit him to show the jury that he had no arrests or convictions of any kind because of the prior bad act evidence which had been admitted against him. Because the rule permits only pertinent evidence and the terms relevant and pertinent are synonymous, it was within the trial court's discretion to limit Punches' evidence in the matter that it did, and we find no error. *See State v. Riggle,* 76 Wyo. 1, 40–42, 298 P.2d 349, 363–64 (Wyo. 1956).

■■■ Finally, Punches contends that evidence of prior bad acts was improperly admitted and denied him a fair trial. The trial court allowed evidence that Punches hit the victim and called him a variety of profane names and allowed evidence of sexual abuse by Punches against the victim. During a pretrial hearing conducted according to *Dean v. State,* 865 P.2d 601 (Wyo.1993), the State offered four pieces of evidence to show preparation, course of conduct, plan and absence of mistake, proof of motive and proof of the identity of the person who committed the acts. The trial court determined the two pieces just described were probative, showing that Punches would commit acts of violence and sexual abuse toward his own child.

Punches complains that the trial court just recited a list of possible purposes of the evidence in violation of this Court's rule that the trial court determine if the evidence is offered for a proper purpose as required by *Vigil v. State,* 926 P.2d 351 (Wyo.1996). The record shows that the trial court determined

these were all purposes of the evidence and not just possibilities. The record supports the decision and shows the trial court did not abuse its discretion in allowing the evidence.

## CONCLUSION

The trial court did not abuse its discretion, and Punches was not deprived of a fair trial because of inflammatory pretrial publicity or a failure to sequester the jury. The admission of evidence in this trial was proper, and the conviction and sentence are affirmed.