Craig BLUMHAGEN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 99–191.

Supreme Court of Wyoming.

Sept. 29, 2000.

890

Representing Appellant: Daniel G. Blythe of Blythe & Steiner, P.C., Cheyenne, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Joseph P. Johnson III, Student Intern for the Prosecution Assistance Program.

Before LEHMAN, C.J., and THOMAS, MACY *, GOLDEN, and HILL, JJ.

* Retired June 2, 2000

MACY, Justice.

Appellant Craig Blumhagen appeals from his conviction on three counts of delivering cocaine.

We affirm.

## ISSUES

Blumhagen presents the following issues on appeal:

Was the trial court's refusal to allow the only eyewitness to the events charged to be impeached error?

Was the trial court's decision to allow [the admission of] the fruits of a search of the defendant's new residence some five months after the events in question an abuse of discretion and was the admission of uncharged misconduct in violation of Rule 403 and Rule 404 of the Wyoming Rules of Evidence error?

Was Mr[.] Blumhagen denied the effective assistance of trial counsel?

## FACTS

In the fall of 1997, Detective Wesley Gasner of the Cheyenne Police Department enlisted the help of a confidential informant to uncover drug activities in Cheyenne. The confidential informant asked Blumhagen to meet her at her apartment on November 2, 1997. Detective Gasner searched the confidential informant prior to the meeting and gave her a cellular telephone and money to buy cocaine.

Blumhagen was driven to the confidential informant's apartment by an unidentified person in a car registered to Rudy Hernandez. Blumhagen gave the cocaine to the confidential informant, and the informant paid him with the money provided by Detective Gasner. During the exchange, Detective Gasner hid in the confidential informant's bathroom, and two other officers surveilled the apartment from outside. Blumhagen left the apartment in Hernandez's car.

The confidential informant also purchased cocaine from Blumhagen later that evening. Detective Gasner drove the confidential in-

formant to Blumhagen's apartment. The detective then gave Blumhagen and the confidential informant a ride to a Cribbon Avenue residence, which apparently belonged to Hernandez. Detective Gasner remained in the car while Blumhagen and the confidential informant walked down an alley near the residence. Blumhagen went into Hernandez's house, and the confidential informant waited outside in the alley. When he returned from Hernandez's house, Blumhagen gave the cocaine to the confidential informant.

On November 23, 1997, the confidential informant met Detective Gasner at the police station. Detective Gasner drove the confidential informant to Blumhagen's apartment, and she went inside. The detective waited in the car and other officers surveilled the area while the confidential informant was in Blumhagen's apartment. Blumhagen told the confidential informant that he was "waiting for the guy to bring it over." After approximately fifteen minutes, Hernandez arrived at the apartment. He and Blumhagen talked in a corner, and then Hernandez left. Blumhagen put the cocaine into the confidential informant's pocket, and she paid him.

On January 16, 1998, the district attorney filed a criminal information, charging Blumhagen with three counts of delivering cocaine. On April 10, 1998, the police searched Hernandez and Blumhagen's residence on Cribbon Avenue, seizing drugs and drug paraphernalia.[1] Blumhagen was arrested, and, after he and Hernandez were tried in a joint trial, a jury found Blumhagen guilty of all three counts. The district court subsequently denied Blumhagen's motion for a new trial, entered a judgment in accordance with the jury's verdict, and sentenced him to the Wyoming State Penitentiary. Blumhagen appealed to the Wyoming Supreme Court.

## DISCUSSION

In his first issue, Blumhagen presents a multi-faceted argument challenging the trial court's decisions on the admissibility of evidence about the confidential informant's drug use. The state argues that the trial court's rulings were correct. We agree with the state.

A trial court has discretion in determining the admissibility of evidence, and we will not disturb that court's evidentiary rulings unless it abused its discretion. *Kenyon v. State*, 986 P.2d 849, 851 (Wyo.1999); *Kolb v. State*, 930 P.2d 1238, 1245 (Wyo. 1996). A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. *Hilterbrand v. State*, 930 P.2d 1248, 1250 (Wyo. 1997). In determining whether there has been an abuse of discretion, we must decide the ultimate issue of whether or not the court could have reasonably concluded as it did. *Id.*; *see also Newport v. State*, 983 P.2d 1213, 1217 (Wyo.1999).

The prosecution filed a motion in limine requesting that the trial court exclude evidence of the confidential informant's prior drug use. The parties argued the motion immediately following jury selection. The trial court reserved its ruling on the motion, stating that it would allow Blumhagen to make an offer of proof concerning his proposed cross-examination of the confidential informant after the prosecution finished its direct examination of her. The prosecution called the confidential informant as its first witness, but it did not question her about her drug use. The prosecution did, however, elicit testimony from the confidential informant concerning the fact that she had been placed on probation three or four months before she began working as a confidential informant and, while on probation, she underwent urine tests, the results of which were negative. Blumhagen did not make an offer of proof before he cross-examined the confidential informant, and he did not question her about her drug use.

Detective Gasner testified after the confidential informant. During the defense counsel's cross-examination of the detective, she questioned him about the confidential informant's drug use. He testified that the confi-

1. Blumhagen apparently moved into Hernandez's Cribbon Avenue house sometime between November 1997 and March 1998.

dential informant told him she had used drugs "in her younger days" but that she was currently "straight."

After the prosecution rested its case, Blumhagen's attorney indicated that she wanted to call a witness to testify about the confidential informant's prior drug use. The defense attorney insisted that the evidence was necessary to impeach the confidential informant's credibility. The defense counsel conceded, however, that she did not expect to elicit testimony showing that the confidential informant was using drugs while she was acting as a confidential informant. Blumhagen called Shane Cauley to testify in an offer of proof concerning the confidential informant's drug use. Cauley testified that he had witnessed the confidential informant using methamphetamine during the summer of 1997 but that he had not seen her use drugs since that time. The trial court refused to allow Cauley to testify before the jury, indicating that Cauley's testimony was collateral and was not relevant to the trial issues.

█ W.R.E. 608(b) prohibits using extrinsic evidence to prove a specific instance of a witness' conduct for the purpose of establishing the witness' character or propensity for lying. *Punches v. State*, 944 P.2d 1131, 1137–38 (Wyo.1997); *Gist v. State*, 766 P.2d 1149, 1151 (Wyo.1988). That rule states:

> (b) *Specific instances of conduct.* – Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

W.R.E. 608(b). Cauley's testimony about the confidential informant's drug use during the summer of 1997 amounted to extrinsic evidence concerning a specific instance of the confidential informant's conduct and was not,

therefore, admissible to attack her credibility.

█ A witness' use of drugs while she is testifying or during the events about which she is testifying may, of course, be presented to the jury because the drug use could have affected the witness' observations or statements. *See Gist*, 766 P.2d at 1151–53; *Valerio v. State*, 542 P.2d 875, 877 (Wyo.1975). The defense did not present any evidence to show that the confidential informant was under the influence of drugs while she was testifying or working with Detective Gasner. Indeed, the defense counsel admitted that she did not expect to elicit testimony from Cauley that the confidential informant was using drugs while she was acting as a confidential informant. Consequently, we agree with the trial court that Cauley's testimony about the confidential informant's prior drug use was not relevant. W.R.E. 401, 402; *Valerio*, 542 P.2d at 877.

█ Blumhagen also contends that Cauley's testimony was admissible because it specifically contradicted the confidential informant's trial testimony. He claims that this Court's decision in *Gist* supports his position. In that case, an undercover narcotics officer testified that he had simulated smoking marihuana while taking part in a drug transaction involving the defendant. *Gist*, 766 P.2d at 1149. The officer testified, however, that he had never actually used illegal drugs. 766 P.2d at 1150. The defense requested that the trial court allow it to present extrinsic evidence of the officer's prior drug use to contradict the officer's statement. *Id.* The trial court refused to allow the defendant to present the extrinsic evidence to the jury. 766 P.2d at 1151–52. On appeal, this Court held that extrinsic evidence of the officer's prior drug use was admissible to refute his statement that he had not used drugs because that issue was material to the case. 766 P.2d at 1152.

There are two important differences between the facts of *Gist* and the facts of the case at bar. The first is that, in this case, the confidential informant did not testify about her prior drug use. The confidential informant's only testimony touching on the

subject of her drug use was that the results of the urine tests she took while on probation were negative. Cauley's proposed testimony did not address the confidential informant's urine tests and, accordingly, did not contradict the confidential informant's testimony. The other difference between *Gist* and this case is that there was evidence in *Gist* which suggested that the officer had used drugs during the events about which he was testifying; in this case, there was no such evidence. Consequently, the holding in *Gist* is not applicable to the case at bar.

■ Blumhagen contends that, under W.R.E. 806, he should have been allowed to have Cauley testify to refute Detective Gasner's testimony that the confidential informant told him she had used drugs in "her younger days" but was presently "straight." W.R.E. 806 provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

Cauley's testimony would not have contradicted the confidential informant's statement to Detective Gasner. During the offer of proof, Cauley testified that the confidential informant had used methamphetamine at some unspecified time during the summer of 1997. Detective Gasner's testimony pertained to his conversation with the confidential informant while she was working with him in November 1997. Cauley's proposed testimony was not directed specifically toward the confidential informant's credibility, and it did not directly contradict the confidential informant's out-of-court statement.

Consequently, W.R.E. 806 did not apply in this case.

■ Blumhagen also contends that, during the prosecution's redirect examination of him, Detective Gasner improperly vouched for the confidential informant's credibility:

> Q. Has [the confidential informant] been a successful confidential informant for you?
>
> A. She's been a great confidential informant and very reliable. She has given me information on other cases that has worked out to be true and correct.

Blumhagen did not object to this line of questioning. We, therefore, apply our three-part plain error standard of review. *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998).

> First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*CB v. State*, 749 P.2d 267, 268–69 (Wyo.1988); *see also Pierson v. State*, 956 P.2d 1119, 1123 (Wyo.1998).

■ Generally, one witness may not testify as to another witness' credibility. *See, e.g., Newport*, 983 P.2d at 1215; *Gayler*, 957 P.2d at 860. The purpose of this rule is to preserve the integrity of the jury process by protecting the jury's right to act as the final determiner of the credibility of the witnesses. *Gayler*, 957 P.2d at 860. We have stated, however, that a trial court does not necessarily commit plain error when it allows testimony which illuminates some aspect of the case even though the testimony incidentally bolsters the credibility of another witness. *Id.; Curl v. State*, 898 P.2d 369, 374 (Wyo.1995).

■ Detective Gasner did not express an opinion as to whether or not the confidential informant was a truthful witness in this case. He merely stated that he considered the confidential informant to be reliable and information she provided to him in other cases had turned out to be true and correct. The trial court did not, therefore, commit plain error by allowing the detective's testi-

mony. Nevertheless, questions like the one posed in this case must be carefully worded so the answer does not invade the jury's province. We, therefore, caution counsel that, generally, such types of questions should be avoided. *See Gayler,* 957 P.2d at 860.

### A. Evidence Seized in Search of Blumhagen's Residence

■ Blumhagen contends that the trial court erred by allowing the physical evidence recovered during the April 1998 search of his residence to be admitted because the physical evidence was obtained in a search conducted nearly five months after the November 1997 drug sales and was, therefore, not relevant and the trial court did not follow the proper procedure in admitting the evidence under W.R.E. 404(b). The state argues that Blumhagen is precluded from claiming on appeal that the trial court's admission of the evidence was erroneous because he withdrew his objection to the evidence. We agree with the state.

The police searched the Cribbon Avenue residence on April 10, 1998, seizing drugs and drug paraphernalia. Prior to the trial, the prosecution filed a notice of its intent to introduce evidence at the trial under W.R.E. 404(b). The evidence listed in that notice, which is pertinent to our resolution of this issue, included evidence describing two sales of cocaine by Blumhagen in March and April 1998 and physical evidence retrieved during the search of the Cribbon Avenue residence.

At the trial, the prosecution attempted to introduce physical evidence seized from the Cribbon Avenue residence. The defense objected, claiming that the physical evidence was not relevant because the search was too remote in time from the November 1997 drug transactions. The prosecution argued that the evidence was relevant and, taking into account the on-going nature of the investigation, the search was not too remote in time from the charged transactions. It offered to establish the relevancy of the physical evidence by calling the confidential informant to testify about the details of March and April 1998 drug sales. The defense objected to evidence of 1998 drug deliveries

being admitted, asserting that such evidence would be highly prejudicial to Blumhagen. Blumhagen withdrew his objection to the physical evidence, and the evidence was admitted. Evidence of March and April 1998 drug transactions was not, however, presented to the jury.

We conclude that any error which resulted from the trial court's failure to require the prosecution to establish the relevancy of the physical evidence was invited by the defense. We thoroughly discussed the "invited error" doctrine in *Schott v. State,* 864 P.2d 38, 39 (Wyo.1993):

> "In appellate practice, the principle of 'invited error' is that if, during the progress of a cause, a party requests or moves the court to make a ruling which is actually erroneous, and the court does so, that party cannot take advantage of the error on appeal or review."

BLACK'S LAW DICTIONARY 487 (5th ed. 1979).

> "The doctrine of 'invited error' embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit."

5 AM.JUR.2D *Appeal and Error* § 713 at 159 (1962).

By withdrawing his objection to the physical evidence, Blumhagen induced the trial court to admit the evidence without requiring the prosecution to prove its relevancy. If Blumhagen had not made the tactical decision to withdraw his objection, presumably the prosecution would have presented evidence of March and April 1998 deliveries to establish that the investigation into Blumhagen's illegal activities was on-going and to tie the April 1998 search to the November 1997 drug sales. We will not allow Blumhagen to profit on appeal from a situation he created.

■ Blumhagen also claims that the trial court erred by failing to make findings concerning the admissibility of the other bad acts evidence seized during the search as required by *Dean v. State,* 865 P.2d 601 (Wyo.1993). The *Dean* case articulated a five-step analysis for determining the admissibility of other bad acts evidence. 865 P.2d

at 606. Of course, the *Dean* holding was superseded by this Court's decision in *Vigil v. State*, 926 P.2d 351, 356 (Wyo.1996), wherein we adopted the four-part test set out by the United States Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). A trial court is not, however, obligated to conduct a hearing to determine whether other-bad-acts evidence is admissible when the defendant does not object to the evidence. *Rigler v. State*, 941 P.2d 734, 738 (Wyo.1997); *Beintema v. State*, 936 P.2d 1221, 1223–24 (Wyo. 1997). In this case, the trial court did not err by failing to conduct a *Vigil* analysis because Blumhagen withdrew his objection to the evidence.

■ Blumhagen contends that the trial court erred by failing to give the jury a limiting instruction concerning the other-bad-acts evidence. "A criminal defendant is entitled, upon making a proper request, to have a jury instruction given which sets forth the limited purpose for which the evidence is being admitted." *Rigler*, 941 P.2d at 738. The trial court is not obligated to give a limiting instruction, however, when the defendant does not request it. *Id.* Blumhagen did not request a limiting instruction, and he may not, therefore, complain on appeal about the trial court's failure to give one.

### B. Assistance of Counsel

Blumhagen claims that he was not provided with effective assistance from his trial counsel. The state maintains that Blumhagen has failed to establish on appeal that his counsel was ineffective or that he was prejudiced by the alleged inadequacies in his representation. We agree with the state.

■■ In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish that his counsel's performance was deficient and the deficient performance prejudiced his defense. *Hernandez v. State*, 976 P.2d 672, 678 (Wyo. 1999); *Smith v. State*, 959 P.2d 1193, 1198 (Wyo.1998). In making a case for ineffective assistance of counsel, a criminal defendant must overcome "a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the

bounds of reasonable professional judgment." *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987); *see also Cureton v. State*, 950 P.2d 544, 546 (Wyo.1997).

■ Blumhagen maintains that he was not properly represented because, during the pendency of his case, his original defense attorney left his position with the public defender's office and took a job with the district attorney's office. Prior to his trial, Blumhagen filed a motion to disqualify the district attorney's office from prosecuting his case because his first defense attorney had begun to work for that office. The trial court denied Blumhagen's motion.

Blumhagen contends that the district attorney's office's continued representation of the state after his original attorney "switched sides" violated the Rules of Professional Conduct for Attorneys at Law. In general, the rules of professional conduct prohibit attorneys from representing clients when there is a potential conflict of interest. *See, e.g.,* Rules of Professional Conduct for Attorneys at Law 1.7, 1.9, 1.10, 1.11, 1.12. Nevertheless, the rules recognize that attorneys change employment and, consequently, include a number of safeguards to protect the clients' interests under such circumstances. For example, when an attorney who works for a governmental agency leaves his employment and enters private practice or takes a position with another governmental agency, he cannot be involved in a matter that he participated in with his first employer. Rules of Professional Conduct for Attorneys at Law 1.11 & cmt. [4]. Other attorneys associated with the disqualified attorney's new employer may, however, undertake or continue representation in a matter that the transferring attorney is prohibited from being involved with, provided that "the disqualified lawyer is screened from any participation in the matter" and notice is given to the former employer. Rules of Professional Conduct for Attorneys at Law 1.11(a). The evidence in this case shows that the district attorney's office complied with the requirements of Rule 1.11(a) by screening Blumhagen's former attorney from participation in the matter and giving notice to the public

defender's office. Additionally, Blumhagen has not shown that his defense was prejudiced, or even affected, by the attorney's change of employment.

 Blumhagen also argues that the legislature's failure to adequately fund the public defender's office had an unfavorable impact upon his defense. He claims that the lack of funds caused qualified attorneys to leave the public defender's office for employment with other governmental agencies. Blumhagen presented a report prepared by the Legislative Service Office which pertained to the funding of the public defender's office. The report was, however, dated nearly five years before Blumhagen's trial took place. Blumhagen does not establish how the information set out in the report was relevant to the funding condition of the public defender's office when his trial took place in 1998 or how the alleged lack of funding directly impacted his defense. Consequently, his claim must fail.

In a third argument, Blumhagen maintains that his trial counsel was ineffective because she was not adequately prepared for trial. He points to a statement his attorney made during her argument on a motion to continue, which was filed four days before the trial began, as evidence that she was not prepared for his trial. The defense attorney claimed that a continuance of the trial date was necessary because "[t]here is [a] considerable amount of investigation that I believe would be helpful and which I have attempted to get done and which I have not been able to get done." The trial court denied the motion to continue.

Blumhagen's attorney was appointed to represent him on August 1, 1998, and his trial began on September 22, 1998. Although the defense counsel stated that she would like to have more time to investigate the case, she did not give specific information about the focus of the proposed investigation or the evidence she expected to recover during her investigation. Without more, an attorney's statement that additional investigation would be helpful to the defendant's case certainly does not establish that the attorney was not adequately prepared for trial or that she did not provide the defendant with a sufficient defense. *See Cureton,* 950 P.2d at 547.

 Blumhagen maintains that, if his attorney had been better prepared for trial, she would have called additional witnesses to impeach the confidential informant and Detective Gasner. He does not, however, provide us with a detailed account of the proposed witnesses' testimony. We do not, therefore, know whether the testimony would have been admissible or helpful to Blumhagen's defense. Consequently, on the record presented here, Blumhagen has not overcome the strong presumption that he was provided with effective assistance by his trial counsel or established that he was prejudiced by the alleged failings of his attorney.[2]

Affirmed.

---

**2.** Blumhagen's appellate brief contains a number of other statements suggesting additional claims of error. He does not, however, support those claims with cogent argument or pertinent authority, and, accordingly, we will not address them in this decision. *Osborn v. Estate of Manning,* 968 P.2d 932, 933 (Wyo.1998).