2016 WY 56

**Justin John SADLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S–15–0200

Supreme Court of Wyoming.

June 3, 2016

Representing Appellant: Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Philip M. Donoho, Assistant Attorney General. Argument by Mr. Donoho.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶ 1] Appellant Justin John Sadler was convicted by a jury of aggravated assault under Wyo. Stat. Ann. § 6–2–502(a)(iii) (threatening to use a drawn deadly weapon). Prior to his trial in state court, Mr. Sadler was convicted in federal court of being a felon in possession of a firearm, based on the same circumstances that gave rise to his state charges. The State indicated that it would seek to admit this prior conviction under W.R.E. 609(b) if Mr. Sadler testified. The district court reserved ruling on whether Mr. Sadler's federal conviction would be admissible, however, it observed that if Mr. Sadler denied possessing the firearm, the probative value of the prior conviction "escalates off the charts." Mr. Sadler elected not to testify at trial. He now challenges the propriety of the district court's comments, claiming that the court improperly chilled the exercise of his constitutional right to defend himself by testifying on his own behalf. Because he did not preserve the issue he now raises on appeal, we affirm.

### ISSUES

[¶ 2] We restate the issues as follows:

1. Did Mr. Sadler preserve his claim that the trial court improperly advised him of his right to testify when it declined to rule on the admissibility of his prior conviction, but commented on its probative value?

2. Did the trial court abuse its discretion when it reserved ruling on W.R.E. 609 evidence, but commented on its probative value?

Because the first issue is dispositive, we do not address the second issue.

## FACTS

[¶ 3] Mr. Sadler's former girlfriend claimed that he held her at gunpoint, prevented her from leaving his residence, and forced her to have sex with him. He was charged by the State with first-degree sexual assault, in violation of Wyo. Stat. Ann. § 6–2–302(a)(i); kidnapping, in violation of Wyo. Stat. Ann. § 6–2–201(a)(iii)(d); and aggravated assault, in violation of Wyo. Stat. Ann. § 6–2–502(a)(iii) (threatening to use a deadly weapon). Mr. Sadler was on parole from an earlier federal felony drug conviction, and, as a result of these events, he was charged in federal court with being a felon in possession of a firearm. The state charges were delayed while the federal charge was tried. Mr. Sadler was convicted on the federal charge and a federal sentence was imposed. He then returned to state court for the proceedings involved here.

[¶ 4] In his pretrial memorandum, Mr. Sadler stated that he "may or may not testify." After the State completed its case-in-chief, and outside of the presence of the jury, the district court asked whether Mr. Sadler intended to testify. His counsel advised that they had made a decision, but needed the lunch hour to discuss the matter. The district court then advised Mr. Sadler regarding his right to testify or not testify on his own behalf and indicated that the court would inquire as to whether Mr. Sadler's attorney had advised him regarding "the pros and cons of deciding to invoke [his] right to remain silent" after the lunch recess. Counsel for the State then raised the possibility of introducing evidence of prior convictions under Rule 609 of the Wyoming Rules of Evidence in the event that Mr. Sadler testified. The following exchange occurred:

[COUNSEL FOR THE STATE]: And, Your Honor, there may be a 609 question as far as Mr. Sadler's convictions for felonies.

THE COURT: Well, I'll—are you asking that I inquire about that on the record?

[COUNSEL FOR THE STATE]: I think it would make sense.

THE COURT: Mr. Sadler, have you discussed the fact with your counsel—and I'm not asking you what the substance of it is but I'm asking you just if you've discussed with your counsel what is called Rule No. 609 of the Wyoming Rules of Evidence? That is, that you can be impeached by prior felony convictions.

[MR. SADLER]: No, Your Honor.

. . . .

THE COURT: You'll discuss that with [your counsel] and I'll ask you questions about that when you return also to make sure that your decision is informed and your consent to waive your right to silence is voluntary, all right.

[MR. SADLER]: All right.

[¶ 5] After the lunch recess, the district court inquired whether Mr. Sadler had spoken to his attorney about his right to remain silent and his intention to testify:

THE COURT: And having discussed [your right to remain silent and the accompanying jury instruction] is it still your decision that you want to testify in this matter?

[COUNSEL FOR MR. SADLER]: Your Honor, that would be contingent upon—and I think that both [State's counsel] and I want clarification prior to him making that decision with regard to his conviction of felon in possession of a weapon and whether that will be admissible—

THE COURT: Well—

[COUNSEL FOR MR. SADLER]:—which is up on appeal.

. . . .

[COUNSEL FOR THE STATE]: ... Your Honor, the conviction for felon in possession of a firearm is from this very set of facts. It is that very firearm that he was convicted of possessing, being a felon in possession of. Your Honor, I think that is probative of—

THE COURT: Of what?

[COUNSEL FOR THE STATE]: That he was the one that had the firearm.

THE COURT: Is that seriously in dispute in this case?

[COUNSEL FOR THE STATE]: Your Honor, I don't know what he's going [ ] to testify to but I think that it is a fact in dispute. I don't think they're acknowl-

edging that he was the one that had the gun.

. . . .

[COUNSEL FOR MR. SADLER]: And we would simply argue, Your Honor, that the prejudicial effect outweighs the probative value. It is not in dispute that he had possession of that gun at some juncture during the evening, but if Your Honor allows testimony that he was convicted as a felon in possession of a gun [that] is highly prejudic[ial to] my client and in this case.

THE COURT: *I'll reserve. I'll tell you right now I'll reserve on the ruling. I need to hear what he testifies to. If he denies that he had it all of [a] sudden that becomes a fact that's in dispute and the probative value of the conviction escalates off the charts.* [ (Emphasis added.) ]

. . . .

THE COURT: . . . Do you intend to testify in this matter?

[MR. SADLER]: Your Honor, can I reserve the right to testify until the end of my defense?

THE COURT: You can. I've gone over these things.

[MR. SADLER]: At this time, I have no intention of testifying.

[¶ 6] In the end, Mr. Sadler elected not to testify and the jury did not hear evidence of his prior felony convictions. The jury acquitted Mr. Sadler of the sexual assault and kidnapping charges, but found him guilty of aggravated assault. After the jury returned its verdict, the district court sentenced Mr. Sadler and this appeal followed.

### DISCUSSION

[¶ 7] Mr. Sadler contends that the advice given by the district court concerning the admissibility of his federal conviction as a felon in possession of a firearm was erroneous because that evidence was not properly

admissible under W.R.E. 609. He also claims that because that advice had a chilling effect on his decision to exercise his right to testify on his own behalf, it was error which deprived him of a constitutional right.[1] The State takes the position that because Mr. Sadler chose not to testify at trial, he did not preserve for appeal his claim that the district court's advice was in error.

### *Did Mr. Sadler preserve his claim that the trial court improperly advised him of his right to testify when it declined to rule on the admissibility of his prior conviction, but commented on its probative value?*

[¶ 8]. Our holdings in *Vaupel v. State*, 708 P.2d 1248, 1250 (Wyo. 1985) and *Tennant v. State*, 786 P.2d 339, 342 (Wyo. 1990), control the question of whether Mr. Sadler preserved his claim on appeal. In *Vaupel*, the trial court had ruled that the defendant's five prior convictions were admissible for impeachment purposes under W.R.E. 609(b) in his trial for charges of embezzlement and check fraud. 708 P.2d at 1248. Mr. Vaupel elected not to testify at trial. *Id.* On appeal, Mr. Vaupel argued that the trial court abused its discretion in ruling that his seventeen-year-old convictions would be admissible. *Id.* at 1249. We held that Mr. Vaupel had not preserved for appeal his challenge to the trial court's evidentiary ruling because he did not testify at trial. *Id.* at 1250.

[¶ 9] The *Vaupel* decision relied upon *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce*, the district court ruled that the defendant's prior conviction would be admissible to impeach him under F.R.E. 609(a). *Id.* at 39–40, 105 S.Ct. at 462. The defendant elected not to testify and the jury returned guilty verdicts. *Id.* at 40, 105 S.Ct. at 462. The United States Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Id.* at 43, 105 S.Ct. at 464.

---

1. The United States Supreme Court recognized a defendant's constitutional right to testify in his own defense in *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 2707, 97 L.Ed.2d 37 (1987). This Court has recommended "that trial courts advise a defendant of his right to testify, or not, and of the choices he must make at the close of the State's case." *Mebane v. State*, 2012 WY 43, ¶ 19, 272 P.3d 327, 330 (Wyo. 2012).

[¶ 10] The *Luce* court set forth several reasons for its conclusion. First, Rule 609(a) directs the court to weigh the probative value of a prior conviction against its prejudice to the defendant. "To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." *Id.* at 41, 105 S.Ct. at 463. Second, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative" when the defendant does not testify. *Id.* That is because a preliminary ruling as to the admissibility of Rule 609 evidence is "subject to change when the case unfolds, particularly if the actual testimony differs" from what was anticipated or offered by way of proffer by the defendant. *Id.* Moreover, a district judge is free to alter a previous in limine ruling in its exercise of sound discretion. *Id.* at 41–42, 105 S.Ct. at 463. Third, when the defendant chooses not to testify, there is no way for the reviewing court to know whether the government would have sought to impeach the defendant with the prior conviction. *Id.* at 42, 105 S.Ct. at 463. "If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction." *Id.* Fourth, "[b]ecause an accused's decision whether to testify seldom turns on the resolution of one factor, a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Id.* (citation and internal quotation marks omitted). And, finally, "[e]ven if these difficulties could be surmounted, the reviewing court would still face the question of harmless error. ... [T]he appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Id.* at 42, 105 S.Ct. at 463–64.

[¶ 11] In *Tennant*, we also rejected the appellant's claim of error, holding that because the appellant did not testify at his trial, he had not preserved his claim of error regarding the trial court's decision to allow the use of two of his prior convictions for impeachment purposes under W.R.E. 609(a). 786 P.2d at 342 (citing *Vaupel*, 708 P.2d at 1248, 1250). The State had also indicated its intention to introduce evidence of a prior conviction for which Mr. Tennant was currently incarcerated as substantive proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" under W.R.E. 404(b) for rebuttal if Mr. Tennant chose to testify. *Id.* at 342. We extended our holding in *Vaupel* to apply to rebuttal evidence offered under W.R.E. 404(b):

> In light of the State's announced position that it would only offer the evidence of the previous crime under Rule 404(b) if Tennant testified, the parameters of the issue are identical. The trial court would need to have before it all the factual circumstances of the case, including the testimony of Tennant, in order to rule on any objection to such evidence.
>
> . . . .
>
> ... An announced choice by the State to use such evidence only for rebuttal perhaps affords the defendant an advantage that the law does not demand, but that choice could not be prejudicial to the defendant under the circumstances of this case.

*Id.* at 342–43. Both *Vaupel* and *Tennant* lead us to conclude that because Mr. Sadler did not testify, he did not preserve the issue of the propriety of the district court's comments on the admissibility of his prior convictions.

[¶ 12] Mr. Sadler argues that *Gentry v. State*, 806 P.2d 1269 (Wyo. 1991), mandates a different result. In *Gentry*, the trial court refused to allow the defendant to testify to his prior convictions on direct examination, instead requiring him to wait until the prosecution introduced them on cross-examination under W.R.E. 609(a). *Id.* at 1270. We held that the introduction of prior convictions on direct is a "legitimate tactic" and it is "proper for the proponent [of such evidence] to blunt the impact" by bringing out pertinent facts on direct examination. *Id.* at 1271. Mr. Gentry contended that this error was of constitutional magnitude as it deprived him of his right to defend himself and to have the jury fairly judge his credibility. *Id.* at 1272. The State, citing *Vaupel*, 708 P.2d at 1250, argued that erroneous rulings under W.R.E. 609(a) do not reach the level of constitutional magnitude. *Id.* Agreeing with Mr. Gentry, we distinguished *Vaupel*, explaining: "*Vaupel* is not helpful because this court was treating

whether a ruling in limine under W.R.E. 609(a) reaches constitutional dimensions. The issue here goes beyond a ruling in limine; the trial court's ruling prevented Mr. Gentry from presenting prior conviction evidence in his case-in-chief." *Id.* We went on to conclude that since "the ruling infringed on Mr. Gentry's right to defend himself and present evidence in his own behalf, it is constitutional error." *Id.* at 1273.

[¶ 13] Mr. Sadler does not contend that he was denied the right to testify to his prior crimes on direct examination or that he was altogether prevented from testifying on his own behalf. Rather, he argues that although the district court reserved ruling on the admissibility of the evidence, its subsequent pronouncement that the evidence's probative value goes "off the charts" if Mr. Sadler denied possessing the firearm was incorrect and served to chill his ability to testify on his own behalf. These circumstances are squarely controlled by *Vaupel* and *Tennant*, and not *Gentry*. In fact, Mr. Tennant advanced an identical argument, claiming that the district court's denial of his motion in limine regarding prior convictions "chilled his right to defend by inhibiting his right to testify[.]" *Tennant*, 786 P.2d at 339. In *Vaupel*, we held that

> if an accused does not testify, he does not preserve the issue of the propriety of a ruling on his motion in limine for appeal. Additionally, we [held] that such rulings do not reach nor violate the Fifth Amendment to the United States Constitution or Art. 1, §§ 9 and 10 of the Wyoming Constitution.

*Id.* at 1250.

[¶ 14] We recognize that *Luce, Vaupel,* and their progeny place a defendant in a quandary. In the event the trial court makes an erroneous decision regarding a prior conviction, those cases force a defendant to risk being confronted by improper prior conviction evidence if he chooses to testify. "This harm, however, is mitigated to a great extent by the fact the testifying defendant can challenge the propriety of the district court's admission of the prior conviction evidence and, if appropriate, receive a new trial on appeal." *State v. Derby,* 800 N.W.2d 52, 56 (Iowa 2011).

[¶ 15] Although the district court's speculation was not helpful, we cannot address whether it was correct because the record does not tell us what the testimony would have been. The district court reserved ruling on the admissibility of the evidence, stating: "I'll tell you right now I'll reserve on the ruling. I need to hear what he testifies to." This statement reflects the notion expressed in *Luce* that without knowing the testimony of the defendant, the trial court's preliminary ruling on admissibility could change. *Luce,* 469 U.S. at 41–42, 105 S.Ct. at 463.

### *CONCLUSION*

[¶ 16] On this record, we do not know what the details of Mr. Sadler's testimony would have been; we do not know whether the State would have sought to introduce the evidence of the prior federal conviction for impeachment under Rule 609 or for some other purpose; we do not know what objections might have been made; and we do not know how the district court would have ruled. Because Mr. Sadler did not testify, his claim of error has not been preserved for appeal. Accordingly, we do not reach the question of whether the district court's comments were in error. Affirmed.