# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 89

APRIL TERM, A.D. 2020

_July 10, 2020_

CODY RUSSELL NELSON,

**Appellant**
**(Defendant),**

**v.**

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

S-19-0259

_Appeal from the District Court of Laramie County_
_The Honorable Thomas T.C. Campbell, Judge_

_Representing Appellant:_

    Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel

_Representing Appellee:_

    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General

_Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ._

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice**.

[¶1]     A jury convicted Cody Nelson of one count of first degree sexual abuse of a minor. On appeal, he contends that the district court erred in allowing the State to withdraw from its plea agreement with him. He further contends that he was denied the right to testify in his own defense. We affirm.

## ISSUES

[¶2]     Mr. Nelson presents two issues on appeal, which we restate as:

> 1)  Did the district court err in granting the State's motion to withdraw from its plea agreement with Mr. Nelson?
>
> 2)  Was Mr. Nelson denied the right to testify in his own defense?

## FACTS

[¶3]     In January 2016, five-year-old SAL stayed overnight at the home of her aunt and the aunt's granddaughter, KBR, in Cheyenne, Wyoming. During that stay, SAL told her aunt that Cody Nelson, her mother's boyfriend, touched her "privates" a couple of days earlier. SAL's aunt described the circumstances of the report:

> Q.     Okay. When S.A.L. told you, what was your reaction?
>
> A.     Well, it was a shock. We were getting ready that morning to go to a party in Chugwater, and she had stuff in her hair, and I said, Why don't we just take a quick bath and wash your hair. And she just flipped right out. And I knew something wasn't right because she always loved to take a bath.
>
>      And so then she just – I mean she just sobbed and, no, no, no, you know, that type of thing.
>
>      And so anyway she said, I'll tell [KBR]. So her and [KBR] went in the bedroom, and [KBR] come back out with her, and then I asked [SAL] what happened . . . .

[¶4]     SAL's aunt took her to the Cheyenne Police Department, and an officer then accompanied them to a hospital where SAL underwent a sexual assault examination. The

1

examination revealed an injury around the anal area and a hymenal injury consistent with an insertion. SAL was then taken into protective custody and placed with her aunt.

[¶5]   Two days later, Detective James Peterson took over the investigation. He first had SAL interviewed by a forensic interviewer trained to interview child victims of sexual abuse. He watched the interview from another room and based on what he heard, he called Mr. Nelson in for questioning. During Detective Peterson's roughly forty-five-minute interview of him, Mr. Nelson repeatedly denied SAL's allegations.

[¶6]   On April 26, 2016, the State filed an information against Mr. Nelson charging him with two counts of first degree sexual abuse of a minor. On January 4, 2019, the parties jointly filed a "Plea Agreement for Recommended Disposition," by which Mr. Nelson agreed to plead no contest to the charge of third degree sexual abuse of a minor, and the State agreed to dismiss both counts of first degree sexual abuse of a minor and recommend a prison term of five to ten years. On the same date, Mr. Nelson requested that the district court set the matter for a change of plea hearing.

[¶7]   On January 11, 2019, the State filed a motion to withdraw from the plea agreement. The motion was signed by the newly elected district attorney and noted that her predecessor had filed the agreement on his last day of office. The motion further stated:

> The State does not seek [to] withdraw from this plea agreement lightly. After careful consideration of the evidence in this case, the State cannot in good conscience allow this type of agreement to move forward. Nelson is presently charged with inserting his fingers into the vagina of a five-year-old on two separate occasions. To allow him to plead guilty to one count of taking "immodest, immoral or indecent liberties" with a child would be a gross miscarriage of justice and one the State cannot be a party to.

[¶8]   Mr. Nelson objected, and on February 8, 2019, the district court held a hearing on the State's motion to withdraw from the plea agreement. In granting the State's motion, it commented:

> A couple of things. . . . [T]here's an awful lot at stake when these things go wrong. One, is there's a room full of prosecutors and defense attorneys who operate on a system. It's formal in many respects, and, of course it's got to be formalized before I do it, but behind that are the reputations of the public defenders, office of the prosecutor, even down to attitude, of individual prosecutors and defense attorneys, and that system eventually brings a case that's ready, either done

2

or not done, to the Court. And I have to be cautious about staying out of that. I'm cognizant of it, of course, but the reasons to withdraw from a plea agreement are actually not before me. And as harsh as it seems, I think they need no reason whatsoever to change their mind prior [to] the plea, just as you would not be bound to plead if you simply changed your mind, [defense counsel]. In other words, from either end, using a contract analysis, the exchange and consideration has not occurred for either of you.

\* \* \* \*

. . . But I will also want to say that while we don't need any reason, the recitation of a reason that they don't like the plea agreement is [not] relevant. In all respects it probably shouldn't be in a pleading.

Whoever took over . . . accepted each and every act that any prosecutor before you agreed to. . . .

If we were here only – and you'd already plead guilty, there wouldn't be any question whatsoever that you're right about the law, that the State has not given sufficient reason to withdraw from the plea agreement, but I disagree with you, and that's your record.

There's no enforceable contract or plea agreement prior to the offer of the plea, or some other consideration.

[¶9]     On May 13-16, 2019, a jury trial was held. After the State rested, Mr. Nelson moved for a judgment of acquittal on both counts of first degree sexual abuse. In the alternative, he moved for acquittal on at least one count on the ground that the victim testified that the touching occurred only once. The court agreed that on the evidence, the jury could only find that the act occurred once, and it granted a judgment of acquittal on the second count, while holding that the evidence was sufficient to go to the jury on the first count.

[¶10]   Mr. Nelson elected to put on a defense and called two witnesses. After they testified, he informed the court that he intended to testify in his own defense. The district court advised him of his right to remain silent and then advised him of the risks associated with testifying, including that current drug charges pending against him might be brought up

3

during cross-examination.[1]  Mr. Nelson responded that he understood his rights and the risks associated with testifying and stated that he wished to testify.

[¶11]  Defense counsel then moved in limine to exclude any evidence of the current drug charges against Mr. Nelson.  He stated that he preferred that Mr. Nelson not testify, and the prosecutor expressed her concerns as well.  After hearing from both parties, the court denied the motion in limine.  The court reasoned that Mr. Nelson's possible use of drugs and being under their influence at the time of the alleged sexual abuse might be relevant impeachment evidence, but it also cautioned that it would stop questions that were irrelevant or beyond the proper scope of impeachment.  After so ruling, it also noted the negative impact Mr. Nelson's testimony might have on plea negotiations in the pending drug case.  Mr. Nelson then informed the court that he did not wish to testify.

[¶12]  On May 16, 2019, the jury returned a verdict finding Mr. Nelson guilty on the remaining count of first degree sexual abuse of a minor.  The district court sentenced him to a prison term of twenty-eight to thirty-eight years, and he timely appealed to this Court.

## STANDARD OF REVIEW

[¶13]  Whether the State has breached a plea agreement is a question of law that we review de novo.  *Montano v. State*, 2019 WY 34, ¶ 13, 437 P.3d 838, 842 (Wyo. 2019) (citing *Nordwall v. State*, 2015 WY 144, ¶ 13, 361 P.3d 836, 839 (Wyo. 2015)).  While Mr. Nelson's claim is not that the State breached the plea agreement, but rather that it withdrew from it without a valid excuse, the claim similarly presents a question of law, and we will therefore review it de novo.  *See United States v. Norris*, 486 F.3d 1045, 1048 (8th Cir. 2007) ("We review the enforceability of a plea agreement de novo.").

[¶14]  Mr. Nelson's claim that he was denied the right to testify on his own behalf presents a constitutional claim that we review de novo.  *Jackson v. State*, 2019 WY 81, ¶ 25, 445 P.3d 983, 990 (Wyo. 2019) (defendant has constitutionally protected right to testify on own behalf); *Petersen v. State*, 2019 WY 132, ¶ 13, 455 P.3d 261, 265 (Wyo. 2019) (claim asserting constitutional violation is reviewed de novo).

## DISCUSSION

### A.    State's Withdrawal from Plea Agreement

[¶15]  A plea agreement is a contract between a defendant and the State and is subject to general contract principles.  *Montano*, ¶ 13, 437 P.3d at 842 (citing *Mendoza v. State*, 2016 WY 31, ¶ 26, 368 P.3d 886, 895 (Wyo. 2016)).  The parties disagree, however, on whether

---

[1] While Mr. Nelson's sexual abuse charges were pending, he was arrested on charges relating to obtaining and delivering heroin between October 2018 and February 2019.

a contract was formed in this instance.  Mr. Nelson contends that the plea agreement contains an exchange of promises and is thus supported by the consideration required to form a contract.  The State counters that plea agreements differ from other contracts in their formation, and that no consideration can be found until a defendant enters a guilty plea.  We agree with the State.

[¶16]  The elements of a contract are offer, acceptance, and consideration, and generally, as Mr. Nelson argues, consideration may consist of "an exchange of mutual promises, which promises impose a legal liability upon each promisor." *Mantle v. North Star Energy & Constr. LLC*, 2019 WY 29, ¶ 69, 437 P.3d 758, 784 (Wyo. 2019) (quoting *Kindred Healthcare Operating, Inc. v. Boyd*, 2017 WY 122, ¶ 42, 403 P.3d 1014, 1024-25 (Wyo. 2017)).  In the case of plea agreements, however, the rule is different. It is the defendant's change of plea that supplies the consideration. *See Ford v. State*, 2003 WY 65, ¶ 10, 69 P.3d 407, 410 (Wyo. 2003) ("In [a Rule 11(e)(1)(B)] plea agreement the defendant provides consideration by pleading guilty.").  Until that plea is entered, or the defendant otherwise relies on the agreement to his detriment, an enforceable contract does not exist.

> The prevailing doctrine is that "the State may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement." Illustrative is *State v. Brockman*, where defendant's performance binding the prosecutor to the plea bargain consisted of giving a self-incriminating deposition, as bargained for by the prosecutor. "Providing information to government authorities, testifying for the government, confessing guilt, returning stolen property, making monetary restitution, failing to file a motion to have charges presented to a grand jury, submitting to a lie detector test and waiving certain procedural guarantees have all been held to constitute acts made in detrimental reliance upon a prosecutor's breached promises." But even such actions do not constitute reasonable reliance where the plea bargain was specifically conditioned on some future event which did not come to pass, and such actions do not foreclose pre-plea withdrawal in the event of defendant's breach.

5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(f) (4th ed. Dec. 2019 update) (footnotes omitted); *see also United States v. Novosel*, 481 F.3d 1288, 1293 (10th Cir. 2007) (per curiam) ("The Supreme Court has held that when a prosecutor withdraws a plea agreement before the defendant enters his plea, the defendant cannot specifically enforce it." (citing *Mabry v. Johnson*, 467 U.S. 504, 511, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984))); 1A Wright and Miller, *Federal Practice and Procedure Crim.* § 182 (5th ed. Apr.

2020 update) ("[U]ntil a defendant pleads guilty pursuant to the agreement, or otherwise detrimentally relies on the government's offer, a court may find that the prosecutor is free to withdraw the plea offer, even if defendant already accepted the deal." (footnote omitted)).

[¶17]   The United States Supreme Court explained in *Mabry*:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.

*Mabry*, 467 U.S. at 507-08, 104 S.Ct. at 2546 (footnote omitted).[2]

[¶18]   The State withdrew from its plea agreement with Mr. Nelson before he acted on his promise to change his plea, and he has not otherwise asserted that he detrimentally relied on the agreement in the few days between when it was executed and the State withdrew from it.  The plea agreement was therefore not an enforceable contract, and the district court did not err in granting the State's motion to withdraw from it.

---

[2] The rule that a plea agreement is not enforceable until the defendant pleads guilty pursuant to it, or otherwise detrimentally relies on it, is entirely consistent with the Wyoming Rules of Criminal Procedure. Rule 11(e), which governs plea agreements, provides in relevant part:

> The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, ***upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense***, the attorney for the state will do any of the following:
>
> > (A) Agree not to prosecute other crimes or move for dismissal of other charges;
> >
> > (B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
> >
> > (C) Agree that a specific sentence is the appropriate disposition of this case.

W.R.Cr.P. 11(e)(1) (emphasis added).  By its plain terms, Rule 11 contemplates that the State's obligations under a plea agreement become due "upon the entering of a plea," and nothing under the rule precludes the State from withdrawing from an agreement before that point.

## B.    Right to Testify

[¶19]   Mr. Nelson next contends that his right to testify was chilled by the combined effect of the district court's in limine ruling and comments by defense counsel and the prosecutor concerning the risks of testifying.  We begin our discussion with the details of the court's ruling and the comments of counsel.

[¶20]   After the State rested, defense counsel informed the court that it was his expectation that Mr. Nelson would testify.  He asked the court to provide Mr. Nelson a proper advisement, which the court said it would do after the first two defense witnesses testified.  When that time came, the court confirmed that Mr. Nelson still wished to testify and then advised him of the risks associated with that decision.

> THE COURT:        . . . If you take the stand and testify in a criminal case you can be asked, not just about this crime.  You could be asked about anything; about your character, about any history, criminal or otherwise that might be from the view of the State and, of course, I'd have to approve it, impeachment.  That means evidence that makes you less reliable, less believable.  Incidents of your past, specific instances if they had to do with lying, and, of course in your case, more specifically, you're under a criminal charge for a felony drug case.  I don't know if there's a way or an impeachment question that might be asked of you, but if you're asked, you have to answer.  You can't plead the Fifth as to some things, that's assert your right and not assert your right about others.
>
> That, of course, is a significant risk to you.  I'm not saying these things to talk you into or out of testifying.  It's just that because of the risks. You have to know these things. And I have to be convinced, or at least to meet my obligations I have to be sure that you understand the risks.
>
> Do you understand the risks I've described and what will happen if you are treated as any other witness in this case?
>
> THE DEFENDANT:        I do.
>
> THE COURT:        And with those risks in mind is your decision to testify or not testify?
>
> THE DEFENDANT:        To testify.

7

[¶21]   Defense counsel then moved in limine for the exclusion of any evidence concerning the drug charges pending against Mr. Nelson.   The district court responded with the following exchange:

> THE COURT:       . . . My admonition to him and his answer and included the warning, and it was only a possibility, but the possibility of that.  Are you saying that based on the in limine ruling you're asking me to make, he may change his mind?
>
> * * * *
>
>        . . . I mean, it's okay if that's – if it's a condition, but let's get by it.  Is it a condition of his – It didn't sound to me like his waiver of his right was conditional on anything, including the charge, the unconvicted matter, the charge of the crime.
>
> [DEFENSE COUNSEL]:   That's right.  That is correct, your Honor.
>
> THE COURT:       All right.
>
> [DEFENSE COUNSEL]:   And so because he may have to, he just may * * * have to invoke his Fifth Amendment right, I can't put him on the stand.
>
> THE COURT:       I understand. He's waiving and you don't want him to?
>
> [DEFENSE COUNSEL]:   I don't want him to testify.
>
> THE COURT:       All right.  Take a seat for a moment, maybe visit with your client.  Those are not – of course, it's his right, not yours, and I may have to go back to you.

[¶22]   The district court next asked the prosecutor whether and how the State intended to use the pending charges in cross-examination.

> THE COURT:       I might not be completely understanding. What about that charge would be different than any other pending criminal charge that you could ask him about it? Being charged is irrelevant till somebody convicts you.  I mean what

8

are the underlying facts of that case that would lead me to be – to allow such a question?

[PROSECUTOR]: Thank you for the inquiry, Your Honor. If I might make an offer of proof.

THE COURT: Let's do it that way. Go ahead.

[PROSECUTOR]: Mr. Nelson's case is part of a larger drug conspiracy investigation conducted by the Division of Criminal Investigation. It included wire taps, photographs, confidential sources, confidential informants, controlled buys. And when Mr. Nelson was arrested as a part of a series of arrests connected to the conspiracy, he made a full and complete confession. And in that statement he admitted to all of the conduct with which he was charged, and then volunteered other information regarding uncharged conduct but also related to drug activity.

THE COURT: His own?

[PROSECUTOR]: Correct.

THE COURT: Of all you've just said, I suppose, any witness has to own up to drug use at or about the time of this event. Did it surround this event?

[PROSECUTOR]: Your Honor, it did. It would have included the time that he was on bond in this case.

THE COURT: And on bond in this case?

[PROSECUTOR]: Yes, sir, and pending trial.

THE COURT: Anything else about the uncharged conduct that you might ask before I rule?

[PROSECUTOR]: Your Honor, I do think it is extremely concerning that Mr. Nelson would subject himself to cross-examination regarding the drug case which is being prosecuted by my office.

* * * *

9

THE COURT: All right. Okay. So first I'm going to rule on the in limine. If that requires further conversation with your client, you may have it.

The motion in limine has to be denied. I probably would, as irrelevant or beyond the scope of impeachment, stop questions maybe on some parts of that uncharged conduct, but conspiracy notions or statements made by other people, you know, that probably goes too far, but he's utilizing drugs and engaging in – utilizing and/or selling drugs at a time where this incident occurred, overlapping this incident, and apparently overlapping the charging date. I think any witness can and has to be asked that at or about the time of the event, at or about the time you testify, whether you're under the influence counts, and it's valid impeachment.

So – and I'm not saying I'd allow all of it. As you've indicated, uncharged conduct; confessions, that might be in the form of a question, but I'm concerned that I can't stop it, [defense counsel]. Knowing I can't stop it, I've been told previously that neither [SAL's mother] nor your client have a deal in the felony criminal case. Is that the case?

[DEFENSE COUNSEL]: No, Your Honor, not under the current cases, not yet.

\* \* \* \*

THE COURT: So his additional risk is that if he makes some under oath admission here on top of the other admissions he made, they're going to have very little reason to deal with him. Potentially could affect those?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: All right. You need a minute to converse with your client about whether he continues to wish to testify?

[DEFENSE COUNSEL]: I don't think we need further conversation, Your Honor. The defendant may just say one thing.

10

THE COURT:  Go ahead, Mr. Nelson.  The question still remains, although I thought we were done, we're not done. The question still remains, whether you wish to take the risks associated with testifying?  Do you?

THE DEFENDANT:  I do not wish to testify.

THE COURT:  You understand it was your right to testify. I've explained what could happen if you did. You know the protections, and you've done so voluntarily, made this decision; is that correct?

THE DEFENDANT:  Yes, Your Honor.

[¶23]  In keeping with his final answer, Mr. Nelson did not testify.  He now contends that the district court erred in denying his motion in limine, and that that erroneous ruling, combined with the comments of defense counsel and the prosecutor, had a chilling effect on the exercise of his right to testify and effectively denied him that right.  The State argues that Mr. Nelson did not preserve his challenge to the motion in limine because he did not testify and that he has not otherwise asserted a cognizable claim that his right to testify was denied.  We again agree with the State.

[¶24]  We have held that "if an accused does not testify, he does not preserve the issue of the propriety of a ruling on his motion in limine for appeal." *Sadler v. State*, 2016 WY 56, ¶ 13, 375 P.3d 728, 732 (Wyo. 2016) (quoting *Vaupel v. State*, 708 P.2d 1248, 1250 (Wyo. 1985)); *see also Tennant v. State*, 786 P.2d 339, 342 (Wyo. 1990).  In *Sadler*, we explained the origin of this rule.

> The *Vaupel* decision relied upon *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce*, the district court ruled that the defendant's prior conviction would be admissible to impeach him under F.R.E. 609(a). *Id*. at 39-40, 105 S.Ct. at 462. The defendant elected not to testify and the jury returned guilty verdicts. *Id*. at 40, 105 S.Ct. at 462. The United States Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Id*. at 43, 105 S.Ct. at 464.

> The *Luce* court set forth several reasons for its conclusion. First, Rule 609(a) directs the court to weigh the probative value of a prior conviction against its prejudice to the defendant. "To perform this balancing, the court must know

11

the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify." *Id*. at 41, 105 S.Ct. at 463. Second, "[a]ny possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative" when the defendant does not testify. *Id*. That is because a preliminary ruling as to the admissibility of Rule 609 evidence is "subject to change when the case unfolds, particularly if the actual testimony differs" from what was anticipated or offered by way of proffer by the defendant. *Id*. Moreover, a district judge is free to alter a previous in limine ruling in its exercise of sound discretion. *Id*. at 41–42, 105 S.Ct. at 463. Third, when the defendant chooses not to testify, there is no way for the reviewing court to know whether the government would have sought to impeach the defendant with the prior conviction. *Id*. at 42, 105 S.Ct. at 463. "If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction." *Id*. Fourth, "[b]ecause an accused's decision whether to testify seldom turns on the resolution of one factor, a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Id*. (citation and internal quotation marks omitted). And, finally, "[e]ven if these difficulties could be surmounted, the reviewing court would still face the question of harmless error. . . . [T]he appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Id*. at 42, 105 S.Ct. at 463–64.

*Sadler*, ¶¶ 9-10, 375 P.3d at 730-31.[3]

---

[3] In *Sadler* and *Vaupel*, the evidence at issue concerned prior convictions that the State intended to use for impeachment under W.R.E. 609, and thus presented the same issues of evaluating admissibility in a vacuum that the Supreme Court cited in *Luce*. *Sadler*, ¶ 2, 375 P.3d at 728; *Vaupel*, 708 P.2d at 1248. In *Tennant*, the Court extended *Luce* and *Vaupel* to Rule 404(b) evidence, reasoning that without the defendant's testimony it could not evaluate the relevance and prejudicial impact of the impeachment evidence. *Tennant*, 786 P.2d at 342. In this case, the admissibility of the evidence would likely have been tested under Rules 401-403. *See Gist v. State*, 766 P.2d 1149, 1151-52 (Wyo. 1988) (evidence of witness' drug use during crime admissible under Rules 401-403 to show impaired perception); *Blumhagen v. State*, 11 P.3d 889, 893 (Wyo. 2000) ("A witness' use of drugs while she is testifying or during the events about which she is testifying may, of course, be presented to the jury because the drug use could have affected the witness' observations or statements."). Like Rules 609 and 404(b), Rules 401-403 require a weighing of relevance and prejudice that is impossible to perform without knowing "the precise nature of the defendant's testimony." *Sadler*, ¶ 10, 375 P.3d at 731 (quoting *Luce*, 469 U.S. at 41, 105 S.Ct. at 463). Our rule from this line of cases therefore applies under these circumstances.

[¶25] Mr. Nelson acknowledges our holdings in *Sadler*, *Tennant*, and *Vaupel,* but contends his claim is different because of the combined chilling effect of the in limine ruling and the comments of defense counsel and the prosecutor. This attempt to sidestep *Sadler* and its predecessors cannot succeed, however, because Mr. Nelson still asks us to review an in limine ruling in a vacuum. Without his testimony, we have no way of gauging the relevance and prejudicial impact of the prosecutor's use of the drug charges for impeachment or even if the prosecutor would have used them in cross-examination. Moreover, while the district court denied the motion in limine, it also made it clear that it would limit how the information relating to the drug charges would be used and would rule on those objections during Mr. Nelson's testimony. We therefore cannot know what questions or evidence the court would have permitted and where it would have drawn those lines. Under these circumstances, it is impossible to find that the court's ruling chilled Mr. Nelson's exercise of his right to testify. *See Sadler*, ¶ 13, 375 P.3d at 732 (rejecting defendant's argument that in limine ruling "was incorrect and served to chill his ability to testify on his own behalf").

[¶26] We likewise reject Mr. Nelson's suggestion that the comments of defense counsel and the prosecutor chilled the exercise of his right to testify. The comments expressed concern regarding the risks of Mr. Nelson's choice to testify, and it is not improper to ask a defendant to consider those risks when making his decision whether to testify.

> "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.... It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like.... Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify."

*Ohler v. United States*, 529 U.S. 753, 759-60, 120 S.Ct. 1851, 1855, 146 L.Ed.2d 826 (2000) (quoting *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)); *see also Mebane v. State*, 2012 WY 43, ¶ 12, 272 P.3d 327, 329 (Wyo. 2012) ("[T]rial courts should inquire of a defendant if he understands his right to testify or not to testify and that his choice is ***knowingly*** and voluntarily made." (emphasis added)); *Guy v. State*, 2008 WY 56, ¶ 27, 184 P.3d 687, 696 (Wyo. 2008) (acknowledging that ultimate decision whether to testify is defendant's but agreeing with district court that "good defense

attorneys cautiously approach any case where a defendant insists upon testifying in light of the potential pitfalls that always accompany such testimony").

## **CONCLUSION**

[¶27]  A plea agreement is not enforceable against the State until a defendant enters a changed plea or otherwise detrimentally relies on the agreement.  Mr. Nelson had done neither when the State withdrew from its plea agreement with him, and the district court therefore did not err in allowing the withdrawal.  Additionally, because Mr. Nelson did not testify, he did not preserve his objection to the court's in limine ruling, and he did not otherwise show a violation of his right to testify. Affirmed.